NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11876

COMMONWEALTH  vs.  KYLE L. JOHNSON.


Plymouth.     October 6, 2015. - February 12, 2016.

Present (Sitting at New Bedford):  Gants, C.J., Spina, Cordy,
         Botsford, Duffly, Lenk, & Hines, JJ.


Identification.  Evidence, Identification.  Practice, Criminal,
     Identification of defendant in courtroom.



     Indictments found and returned in the Superior Court
Department on March 11, 2013.

     A pretrial motion to suppress evidence was heard by
Cornelius J. Moriarty, II, J.

     An application for leave to prosecute an interlocutory
appeal was allowed by Cordy, J., in the Supreme Judicial Court
for the county of Suffolk, and the appeal was reported by him to
the Appeals Court.  The Supreme Judicial Court on its own
initiative transferred the case from the Appeals Court.


     Carolyn A. Burbine, Assistant District Attorney, for the
Commonwealth.
     Edward Crane for the defendant.
     Karen A. Newirth, James L. Brochin, & Jennifer H. Wu, of
New York, & R.J. Cinquegrana, for The Innocence Project &
another, amici curiae, submitted a brief.
     Lisa Kavanaugh, Benjamin H. Keehn, Patrick Levin, Radha
Natarajan, & Paul R. Rudof, Committee for Public Counsel

Services, & David Lewis, for Committee for Public Counsel Services & another, amici curiae, submitted a brief.

GANTS, C.J.  The issue presented in this case is whether the motion judge, applying the common-law principles of fairness in Commonwealth v. Jones, 423 Mass. 99, 109 (1996), committed an abuse of discretion in allowing the defendant's motion to suppress the victim's identifications of the defendant as the intruder he had struggled with in his home.  The judge found that, through no fault of the police, the identifications were "impermissibly tainted by the suggestive circumstances."  We provide guidance regarding the application of the Jones standard and conclude that the judge did not abuse his discretion in allowing the motion to suppress.[1]

Background.  We summarize the facts found by the motion judge, supplemented where necessary with undisputed evidence that was implicitly credited by the judge.  See Commonwealth v. Jones-Pannell, 472 Mass. 429, 431 (2015), citing Commonwealth v. Isaiah I., 448 Mass. 334, 337 (2007), S.C., 450 Mass. 818 (2008).

On September 21, 2012, Adebayo Talabi, the victim, received a telephone call from a neighbor that the door to his apartment

---

[1] We acknowledge the amicus brief submitted by the Committee for Public Counsel Services and the Massachusetts Association of Criminal Defense Lawyers and the amicus brief submitted by the Innocence Project and the Innocence Network.

was open.  He returned to his home and encountered a stranger, who was armed with a firearm, inside his apartment.  They struggled, and during the struggle the firearm went off, striking no one.  The intruder fled.  The victim reported the incident to the Brockton police department and described the assailant as a light-skinned black male wearing a gray hooded sweatshirt.  Brockton police Detective Jacqueline Congdon asked the victim to come to the police station to review booking photographs to see if he could identify the intruder, but he did not do so.

On September 27, 2012, the victim telephoned Brockton police Officer Scott Besarick and told Besarick he now knew the identity of the intruder.  Officer Besarick transferred the telephone call to Detective Congdon's line, and the victim explained to her that he had recently spoken to his cousin, T.J. Hendricks, who lived in the Roxbury section of Boston and whose home had been broken into one day before the incident at the victim's apartment.  The victim then added Hendricks to the telephone call so that it was a three-way call.  Hendricks said that the break-in at his Roxbury home had been captured in a video recording by a neighbor's surveillance system that showed the person who had broken into his home.  By the "size and shape" of the person in the surveillance footage, Hendricks believed that the intruder "could possibly be" the defendant,

who was the boy friend of a cousin of both Hendricks and the victim. Hendricks obtained a photograph of the defendant and his girl friend taken by Hendricks's mother at a cookout, which he forwarded to the victim. The victim viewed the photograph and identified the defendant as the intruder he had discovered in his home.

Using this information, Detective Congdon assembled an eight-person photographic array containing the defendant's photograph. Detective Thomas Hyland met with the victim to show him the photographic array. The victim positively identified the defendant's photograph in the array as the man he discovered in his apartment.

The defendant was indicted on seven charges, including armed assault in a dwelling, in violation of G. L. c. 265, § 18A, and breaking and entering in the daytime, in violation of G. L. c. 266, § 17. The defendant moved to suppress all out-of-court and in-court identifications of the defendant by the victim. The motion judge held an evidentiary hearing at which Detectives Congdon and Hyland testified. The judge found that the police did not violate the defendant's constitutional rights in administering the photographic array but allowed the motion to suppress the two out-of-court identifications under the common-law principles of fairness recognized in Jones, 423 Mass. at 109, concluding that they were "impermissibly tainted by the

suggestive circumstances." The motion judge also allowed the motion to suppress any in-court identification, concluding that the Commonwealth had failed to meet its burden of showing by clear and convincing evidence that an in-court identification would be based upon an independent source, citing Commonwealth v. Botelho, 369 Mass. 860, 868 (1976). The Commonwealth moved for reconsideration of the ruling, which was denied, and then sought leave to appeal the motion judge's decision. A single justice allowed the application for interlocutory appeal, and we transferred the case to this court on our own motion.

Discussion. Before we address whether the judge was correct to suppress the eyewitness identifications in this case, we set forth our law regarding the admissibility of eyewitness identifications.

1. Law of eyewitness identifications. a. Out-of-court identifications made during a police identification procedure. Where an out-of-court eyewitness identification arises from an identification procedure that was conducted by the police, the identification is not admissible under art. 12 of the Massachusetts Declaration of Rights if the defendant proves by a preponderance of the evidence that the identification was "so unnecessarily suggestive and conducive to irreparable misidentification that its admission would deprive the defendant of his right to due process." Commonwealth v. Walker, 460 Mass.

590, 599 (2011), and cases cited. "In considering whether identification testimony should be suppressed, the judge must examine 'the totality of the circumstances attending the confrontation to determine whether it was unnecessarily suggestive.'" Commonwealth v. Silva-Santiago, 453 Mass. 782, 795 (2009), quoting Commonwealth v. Odware, 429 Mass. 231, 235 (1999). "Where the defendant satisfies this burden, the out-of-court identification is per se excluded as a violation of the defendant's right to due process under art. 12 . . . ." Walker, supra at 599 n.13. See Commonwealth v. Johnson, 420 Mass. 458, 462-463 (1995).

Under our per se exclusion standard, a defendant must prove not only that the out-of-court identification procedure administered by the police was suggestive, but that it was "unnecessarily suggestive" (emphasis in original). Commonwealth v. Crayton, 470 Mass. 228, 235 (2014), quoting Commonwealth v. Figueroa, 468 Mass. 204, 217 (2014). This inquiry focuses on whether police had "good reason" to engage in a suggestive identification procedure. Crayton, supra at 235-236. Figueroa, supra. See Commonwealth v. Austin, 421 Mass. 357, 361-362 (1995) ("good reason" to conduct showup depends on "the nature of the crime involved and corresponding concerns for public safety; the need for efficient police investigation in the immediate aftermath of a crime; and the usefulness of prompt

confirmation of the accuracy of investigatory information, which, if in error, will release the police quickly to follow another track").

By adopting a rule of per se exclusion under art. 12, we rejected the rule under the Fourteenth Amendment to the United States Constitution in which a motion judge must apply a two-step analysis to the question of admissibility. Johnson, 420 Mass. at 464-465. Under the Federal two-step analysis, the judge asks first whether the eyewitness identification was obtained by a police procedure that was unnecessarily suggestive. See Manson v. Brathwaite, 432 U.S. 98, 110 (1977). See also Perry v. New Hampshire, 132 S. Ct. 716, 726 (2012) ("A primary aim of excluding identification evidence obtained under unnecessarily suggestive circumstances . . . is to deter law enforcement use of improper lineups, showups, and photo[graphic] arrays"). If it was, the judge then asks whether, notwithstanding the unnecessarily suggestive procedure, the eyewitness identification is reliable under "the totality of the circumstances." See Manson, supra. Under Federal constitutional law, because "reliability is the linchpin," the out-of-court identification, if found reliable, is admissible even where obtained through an unnecessarily suggestive procedure. See id. at 110, 114.

We rejected the Federal reliability test regarding out-of-court identifications in part because it "does little or nothing to discourage police from using suggestive identification procedures." Johnson, 420 Mass. at 468. We noted that, under the Federal standard, "[a]lmost any suggestive lineup will still meet reliability standards" and be admitted in evidence despite the unnecessary suggestiveness of the identification procedure. Id., quoting Note, Twenty-Years of Diminishing Protection: A Proposal to Return to the Wade Trilogy's Standards, 15 Hofstra L. Rev. 583, 606 (1987). We concluded that, if we were to adopt the Federal reliability test under art. 12, it would send "a message to police that, absent extremely aggravating circumstances, suggestive showups will not result in suppression." Johnson, supra.

Under our per se standard, the reliability of an out-of-court identification cannot save the admissibility of an unnecessarily suggestive out-of-court identification. But we declared in Johnson, supra at 467, that "the per se approach does not keep relevant and reliable identification evidence from the jury" because the Commonwealth may admit a subsequent identification if it proves by clear and convincing evidence that the identification came from a source independent of the suggestive procedure.

b.  <u>Out-of-court identifications made without police wrongdoing</u>.  Where an out-of-court eyewitness identification is suggestive through no fault of the police, suppression cannot deter police misconduct because there is none.  Yet, as we recognized in <u>Jones</u>, 423 Mass. at 109, where a witness's identification of a defendant arises from highly or especially suggestive circumstances, its admissibility "should not turn on whether government agents had a hand in causing the confrontation" because "[t]he evidence would be equally unreliable in each instance."  A judge, applying "[c]ommon law principles of fairness," may decline to admit an unreliable eyewitness identification that resulted from a "highly" or "especially" suggestive confrontation with the defendant.  <u>Id</u>.[2]

Among our "common law principles of fairness" is the evidentiary rule that a judge has discretion to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice."  <u>Crayton</u>, 470 Mass. at 249

---

[2] In <u>Commonwealth</u> v. <u>Jones</u>, 423 Mass. 99, 108 (1996), we recognized that, even where the police did not cause a highly suggestive confrontation, a judge might find identification testimony to be so unreliable that it must be excluded "as a matter of fairness on due process grounds."  We declared, however, that "[w]e need not base our decision on constitutional grounds," <u>id</u>. at 109, and ruled the eyewitness identification at issue in that case to be inadmissible on "[c]ommon law principles of fairness."  <u>Id</u>.  After our opinion in <u>Jones</u>, we limited our review of the admission of identification testimony where the police did nothing improper to common-law principles of fairness, see <u>Commonwealth</u> v. <u>Odware</u>, 429 Mass. 231, 236 (1999), and we do so here.

n.27, quoting Mass. G. Evid. § 403 (2014). A judge's authority to exclude a suggestive and unreliable eyewitness identification under Jones is an exercise of this broader authority articulated in Mass. G. Evid. § 403. See Commonwealth v. Alcide, 472 Mass. 150, 166 (2015), quoting Jones, supra at 107 ("A judge's authority to exclude severely unreliable identification testimony is closely related to his or her more general 'discretion to exclude evidence that is more prejudicial than probative'").[3]

A motion to suppress an identification under Jones is similar to a motion to suppress an identification under art. 12 in that the defendant must timely file the motion before trial, see Mass. R. Crim. P. 13 (d) (2), as appearing in 442 Mass. 1516 (2004), and bears the burden of proof by a preponderance of the evidence. See Walker, 460 Mass. at 604-605. It is also similar in that the evidentiary hearing on the motion should be conducted and ruled on before trial, so that the Commonwealth

_____

[3] In Perry v. New Hampshire, 132 S. Ct. 716, 728 (2012), the United States Supreme Court declared that its "unwillingness to enlarge the domain of due process" to require exclusion of suggestive identifications that were not obtained through improper police conduct rested "in large part" on the presence of other safeguards in the adversary system that address the risk that juries will place "undue weight on eyewitness testimony of questionable reliability." Among the protections cited was the authority of trial judges under State and Federal rules of evidence "to exclude relevant evidence if its probative value is substantially outweighed by its prejudicial impact or potential for misleading the jury," citing Fed. R. Evid. 403. Id. at 729.

and the defendant have the opportunity to challenge the ruling through an interlocutory appeal under Mass. R. Crim. P. 15 (a) (2), as appearing in 422 Mass. 1501 (1996).  But a suppression ruling under Jones differs in two fundamental ways from the suppression ruling that a judge makes under art. 12 where the police are alleged to have obtained an eyewitness identification through an unnecessarily suggestive identification procedure.

First, the standard of admissibility is different; admissibility is determined not by a rule of per se exclusion, because there is no police misconduct to deter through suppression, but by weighing the probative value of the identification against the danger of unfair prejudice, and determining whether the latter substantially outweighs the former.

The danger of unfair prejudice arises because the accuracy of an identification tainted by suggestive circumstances is more difficult for a jury to evaluate.  "Jurors . . . tend to be unaware of . . . how susceptible witness certainty is to manipulation by suggestive procedures or confirming feedback." Commonwealth v. Gomes, 470 Mass. 352, 373 (2015), quoting State v. Lawson, 352 Or. 724, 778 (Appendix) (2012).  "Social science research has shown that a witness's level of confidence in an identification is not a reliable predictor of [its] accuracy

. . . , especially where the level of confidence is inflated by its suggestiveness." Crayton, 470 Mass. at 239, citing Supreme Judicial Court Study Group on Eyewitness Evidence:  Report and Recommendations to the Justices 19 (July 25, 2013) (Study Group Report).  See Crayton, supra at 239 n.15, quoting Wells & Quinlivan, Suggestive Eyewitness Identification Procedures and the Supreme Court's Reliability Test in Light of Eyewitness Science:  30 Years Later, 33 Law & Hum. Behav. 1, 12 (2009) ("Studies have shown . . . that 'confirmatory suggestive remarks from the lineup administrator [like 'Good, you identified the actual suspect'] consistently inflate eyewitness certainty for eyewitnesses who are in fact mistaken'").  Yet, studies have shown that juries tend to give great weight to a witness's confidence in an identification.  See Perry, 132 S. Ct. at 739 (Sotomayor, J., dissenting) ("Study after study demonstrates that . . . jurors place the greatest weight on eyewitness confidence in assessing identifications even though confidence is a poor gauge of accuracy" [footnotes omitted]).  See also Study Group Report, supra at 69-70, citing Leippe, Eisenstadt, & Rauch, Cueing Confidence in Eyewitness Identifications: Influence of Biased Lineup Instructions and Pre-Identification Memory Feedback Under Varying Lineup Conditions, 33 Law & Hum. Behav. 194, 194 (2009), and Wells, Lindsay, & Ferguson, Accuracy, Confidence, and Juror Perceptions in Eyewitness

Identification, 64 J. Applied Psychol. 440, 446 (1979) ("Studies show that eyewitness confidence is the single most influential factor in juror determinations regarding the accuracy of an eyewitness identification").

Suggestive identification procedures may also affect a witness's memory regarding the quality of his or her observation that led to the identification.  See Gomes, 470 Mass. at 373 ("Preidentification feedback may contaminate the witness's memory").  In one study, witnesses who received confirmatory feedback reported "'a better view of the culprit, a greater ability to make out details of the face, greater attention to the event, [and] a stronger basis for making an identification,' compared to witnesses receiving no feedback."  Id. at 374 n.35, quoting Wells & Bradfield, "Good, You Identified the Suspect": Feedback to Eyewitnesses Distorts Their Reports of the Witnessing Experience, 83 J. Applied Psychol. 360, 366 (1998).  See Commonwealth v. Collins, 470 Mass. 255, 263 (2014).

In short, suggestiveness is likely to inflate an eyewitness's certainty regarding an identification and to alter the eyewitness's memory regarding the quality of his or her observation of the offender to conform to the eyewitness's inflated level of confidence in the identification.  We recognized this danger, and the effect it could have on a jury's ability accurately to evaluate identification evidence, in

Jones, where we declared that "cross-examination and a judge's jury instruction concerning eyewitness identification testimony" could not "fairly protect the defendant from the unreliability" of the identification in that case.  Jones, 423 Mass. at 110.

The probative value of the identification depends on the strength of its source independent of the suggestive circumstances of the identification.  See Allen v. Moore, 453 F.2d 970, 975 (1st Cir.), cert. denied, 406 U.S. 969 (1972) ("the firmer the contemporaneous impression, the less is the witness subject to be influenced by subsequent events").  In determining the strength of an identification's independent source, we consider such factors as the quality of the witness's opportunity to observe the offender at the time of the crime, the amount of time between the crime and the identification, whether the witness's earlier description of the perpetrator matches the defendant, and whether the witness earlier identified another person as the perpetrator or failed to identify the defendant as the perpetrator.  See Johnson, 420 Mass. at 464; Botelho, 369 Mass. at 869.  Another factor is the witness's prior familiarity with the person identified, where that person is a witness's family member, friend, or long-time acquaintance.  See Model Jury Instructions on Eyewitness Identification, 473 Mass. 1051, 1054 (2015).  After weighing the risk of unfair prejudice arising from the suggestiveness of the

identification against the strength of its independent source, the judge must determine whether the identification is so unreliable that it would be unfair for a jury to give it any weight in their evaluation of the evidence.  If it is, the judge must rule it inadmissible.

Second, the standard of appellate review under art. 12 differs from the standard of review under the common-law principles of fairness articulated in Jones.  Where an identification arises from a police procedure, we apply the standard appropriate for review of a decision implicating constitutional rights:  we review a judge's findings of fact to determine whether they are clearly erroneous but review without deference the judge's application of the law to the facts as found.  See Commonwealth v. Watson, 455 Mass. 246, 250 (2009). Where an identification does not arise from a police procedure, admissibility rests on an evidentiary judgment regarding the reliability of the identification, so we review under the abuse of discretion standard and ask "whether the judge's decision resulted from 'a clear error of judgment in weighing the factors relevant to the decision . . . such that the decision falls outside the range of reasonable alternatives.'"  Commonwealth v. Kolenovic, 471 Mass. 664, 672 (2015), quoting L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

c. <u>In-court identifications</u>. Where a judge excludes an out-of-court identification arising from a suggestive police procedure under our art. 12 standard of per se exclusion, the judge must still consider whether to admit a subsequent out-of-court or in-court identification by the witness. Where a witness's out-of-court identification is excluded, the Commonwealth may offer a subsequent out-of-court or in-court identification by the witness if the Commonwealth proves by clear and convincing evidence that the subsequent identification is reliable because it rests on a source independent of the unnecessarily suggestive confrontation. <u>Johnson</u>, 420 Mass. at 463-464. <u>Botelho</u>, 369 Mass. at 867-868. We recognize that we have recently declared that an "in-court identification is comparable in its suggestiveness to a showup identification" and have prohibited its admission in the absence of a showing of "good reason" where there was no out-of-court identification of the defendant by the witness before trial, <u>Crayton</u>, 470 Mass. at 236, 241, or where the out-of-court identification by the witness was "something less than an unequivocal positive identification of the defendant," <u>Collins</u>, 470 Mass. at 262. We need not consider in this case whether the reasoning in <u>Crayton</u> and <u>Collins</u> dictates that we eliminate or revise the independent source doctrine as applied to in-court identifications because the identifications here were not obtained through any fault of

the police.  We will await an appropriate case to address that issue.

But this is an appropriate case to consider whether the independent source doctrine applies to an in-court identification where both out-of-court identifications were declared inadmissible under common-law principles of fairness. We conclude that it does not apply.  Where the suggestiveness does not arise from police conduct, a suggestive identification may be found inadmissible only where the judge concludes that it is so unreliable that it should not be considered by the jury. In such a case, a subsequent in-court identification cannot be more reliable than the earlier out-of-court identification, given the inherent suggestiveness of in-court identifications and the passage of time.  See Model Jury Instructions on Eyewitness Identification, 473 Mass. at 1055 endnote j, quoting Study Group Report, supra at 31-32 ("The more time that elapses between an initial observation and a later identification procedure . . . the less reliable the later recollection will be").  In sum, because a judge declares an out-of-court identification to be inadmissible under Jones only where it is unreliable, the Commonwealth cannot prevail in proving by clear and convincing evidence that the witness's in-court identification would be reliable.

2.  <u>Application of law to the facts of this case</u>.  We turn now to the Commonwealth's arguments that the judge abused his discretion in declining to admit in evidence the victim's out-of-court and anticipated in-court identifications of the defendant.  The Commonwealth contends that the identifications may be excluded under <u>Jones</u> only if they were made under "highly" or "especially" suggestive circumstances and that the judge abused his discretion in finding that the circumstances here met that standard.  In <u>Jones</u>, we characterized the witness's confrontation with the defendant as both "highly suggestive" and "especially suggestive," but we did not define either term or clarify whether they were two different characterizations of the same standard.  See <u>Jones</u>, 423 Mass. at 109.  Nor have we done so in subsequent cases that applied the <u>Jones</u> standard.

The Commonwealth contends that the "degree of suggestiveness required for exclusion" under <u>Jones</u>'s common-law rule "is higher than that required for exclusion based on improper law enforcement procedures, since no possible deterrent effect is involved."  We disagree.  Where an identification is obtained by law enforcement, our rule of per se exclusion means that the out-of-court identification must be suppressed where it derived from an unnecessarily suggestive procedure even if the identification was reliable because of the strength of its

independent source.  Accordingly, we have set a high standard: the identification must be "so unnecessarily suggestive and conducive to irreparable misidentification that its admission would deprive the defendant of his right to due process." Walker, 460 Mass. at 599.  Where, as here, there was no misconduct by the police in obtaining the identification, suggestiveness, by itself, does not mandate suppression. Rather, the danger of unfair prejudice arising from the suggestive circumstances will always be weighed against the independent source of the identification, with reliability the ultimate measure.  Because suggestiveness simply triggers a reliability analysis, the suggestiveness standard need not be set so high.  To trigger a Jones analysis, the circumstances surrounding the identification need only be so suggestive that there is a substantial risk that they influenced the witness's identification of the defendant, inflated his or her level of certainty in the identification, or altered his or her memory of the circumstances of the operative event.  Where the independent source of an identification is slim, this level of suggestiveness may be sufficient to support a finding of inadmissibility; where the independent source is substantial, a greater level of suggestiveness would be needed to support a

finding that the danger of unfair prejudice substantially outweighs the probative value of the identification.[4]

We recognize that the victim's identification of the defendant in this case was less suggestive than the identification in Jones.[5] But the judge did not err in concluding that it was sufficiently suggestive to trigger a reliability analysis. The judge reasonably found that Hendricks suggested to the victim that the man who invaded the victim's home on September 21, 2012, might have been the same man he suspected broke into his own home the previous day -- a man who was connected to both of them because he was the boy friend of their cousin. The judge reasonably could have found a substantial risk that these suggestive circumstances influenced the victim when he examined the cookout photograph of the

_____

[4] We need not address here whether a judge may exclude an identification where there was no suggestiveness in the identification but where the identification might be unreliable because of the circumstances surrounding the witness's perception of the event, such as the distance between the witness and the perpetrator, the poor quality of the lighting, or the brevity of the observation.

[5] In Jones, 423 Mass. at 101, a motel employee saw an African-American man come into the lobby of the motel, spend approximately one minute in the lobby, return to the lobby about ten minutes later, and drive away in a vehicle. The employee saw the African-American man for a total of only approximately three minutes and there was no event that caused her to pay particular attention to him. Id. at 101-102. However, at two pretrial hearings, the witness, having learned that the crime in that case had been committed by Vietnamese and African-American men, saw the defendant, who was African-American, shackled to a Vietnamese man. Id. at 102-103, 110.

defendant and identified the defendant as the intruder from that photograph and from the subsequent photographic array. The judge also reasonably could have found a substantial risk that this suggestion affected the witness's level of certainty in the identification and his recollection of his observations of the intruder during the incident.

The judge also did not err in giving little probative weight to the independent source of the identification. The judge noted that the victim's encounter with the intruder was brief and his description meager: a light-skinned black male wearing a gray hooded sweatshirt, with no information regarding the intruder's height, weight, or facial hair, or the lighting conditions in the apartment. The judge also noted from his own observation that the defendant was not light-skinned. In view of the substantial deference given to the motion judge under the abuse of discretion standard, we conclude that the judge did not abuse his discretion in allowing the motion to suppress the identifications. We therefore affirm the allowance of the defendant's motion to suppress the out-of-court and in-court identifications of the defendant by the victim.

So ordered.