NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReportersjc.state.ma.us

16-P-754                                         Appeals Court

COMMONWEALTH  vs.  ROBERT GALIPEAU.


No. 16-P-754.

Norfolk.      October 4, 2017. - May 16, 2018.

Present:  Green, Hanlon, & Neyman, JJ.


Robbery.  Constitutional Law, Identification.  Due Process of
     Law, Identification.  Evidence, Identification, Photograph.
     Identification.  Practice, Criminal, Motion to suppress,
     Identification of defendant in courtroom.



     Indictments found and returned in the Superior Court
Department on May 23, 2013.

     A pretrial motion to suppress evidence was heard by Kenneth
J. Fishman, J., and the cases were tried before Thomas A.
Connors, J.


     Barbara A. Munro for the defendant.
     Stephanie Martin Glennon, Assistant Attorney General, for
the Commonwealth.


     HANLON, J.  After a jury trial, the defendant, Robert

Galipeau, was convicted of armed robbery arising from the

gunpoint theft of cash from three men at approximately 1 A.M. on

April 18, 2013, immediately after the victims left the Assembly

Bar in Quincy. The sole issue at trial was the identification of the robber. The defendant argues on appeal that his motion to suppress a photographic identification should have been allowed and that the trial judge improperly allowed an in-court identification. We affirm.

1. Motion to suppress photographic identification. "We recite the facts as found by the motion judge, supplemented by uncontroverted testimony" submitted during the evidentiary hearing on the motion to suppress. Commonwealth v. Cordero, 477 Mass. 237, 238 (2017). We accept all of the judge's factual findings, none of which is clearly erroneous. See Commonwealth v. Borgos, 464 Mass. 23, 32 (2012).

After the robbery, Leo Tang, one of the victims, told the police that the robber had followed him and his two friends from the Assembly Bar to his car across the street. Tang described the robber as a white male, approximately five feet, ten inches tall, scruffy looking, with facial hair, and wearing a hooded sweatshirt, gray shirt, and jeans. Tang had seen the man in the bar earlier that night, with a Budweiser beer next to him. After the police received this information from Tang, an officer met with Robert Sylva, the bar manager, to view surveillance videotape. The videotape depicted a white man drinking a Budweiser at a table; he fit the description Tang had given.

Sylva told the officer that the person drinking a Budweiser in the video was the defendant.

Once the police had the defendant's name, two officers went to his home and knocked on his front door but received no answer. They went toward the rear door, and, while walking along the right side of the house, they saw the defendant standing at the sink in the kitchen of the ground floor apartment. The officers then went back to the front door and knocked again. They knocked on the door without response for a lengthy period of time before the defendant finally answered. He was wearing only a pair of jeans and sneakers, and his face appeared to be freshly shaved, with cuts on his upper and lower lip that were actively bleeding.

At approximately 3 A.M., police officers brought Tang, in a police cruiser, to the street outside the defendant's house for a showup identification procedure. Tang viewed the defendant, who was standing on the sidewalk, for five to ten minutes. Tang did not identify the defendant as the robber at that time, saying that he could not be sure of an identification because the robber had been scruffier, with facial hair.

Later that day, Quincy Police Detective Ricky Wash created a computer-generated photo array, including the defendant's photo and six other photos of men with similar physical

characteristics.[1]  The photo identification procedure was administered by Detective Michael Ward, who was otherwise uninvolved in the investigation.

Tang viewed the photos one at a time, and, when he came to the second photo, he said it looked similar[2] to the robber, but he was having trouble making a positive identification because the robber had been wearing a hat and a hooded sweatshirt.  At Ward's instruction, Tang went through the remaining photos. When he returned to the second photo, Ward put a piece of paper over the upper head of the person depicted and Tang covered the person's ears with his hands.  Tang then wrote on the photo, at Ward's request, "I believe this is the suspect because he seems like an average white male.  The chin structure with a little

---

[1] One of the photos was of a man with a darker complexion than the others.  Wash also used an old booking photo of the defendant in the array, rather than a newer photo from the Registry of Motor Vehicles.  The motion judge determined that the array was fairly composed and we defer to his judgment. See Commonwealth v. Forte, 469 Mass. 469, 478 (2014).

[2] The defendant attempts to make much of the fact that Detective Ward used the word "familiar" instead of "similar" in his testimony.  Specifically, Ward testified, "When I turned over photo number 2, Mr. Tang looked at it and said that looks familiar and then, starting tapping his finger on the photo for several minutes."  Tang's own testimony, however, was that photograph number 2 "looked like the guy."  This testimony was sufficient to support the judge's finding.

facial hair look similar.  I couldn't see his head or ears because he wore a hat and hoodie at the time."

a.  Multiple identification procedures.  "For a motion to suppress a photographic identification to succeed, the defendant must show by a preponderance of the evidence that, in light of the totality of the circumstances, the procedures employed were so unnecessarily suggestive and conducive to irreparable misidentification as to deny the defendant due process of law."[3] Commonwealth v. Borgos, 464 Mass. 23, 32 (2012), quoting from Commonwealth v. Watson, 455 Mass. 246, 250 (2009).  See Mass. G. Evid. § 1112(b)(1)(2017).  In reviewing a decision on such a motion, we "review without deference the judge's application of the law to the facts as found."  Commonwealth v. Johnson, 473 Mass. 594, 602 (2016).

The defendant's primary argument is that the unsuccessful showup tainted the subsequent photo array procedure, rendering it impermissibly suggestive.  The motion judge addressed this issue squarely and concluded that conducting a photo array

---

[3] "Where the defendant satisfies this burden, the out-of-court identification is per se excluded as a violation of the defendant's right to due process under art. 12 of the Massachusetts Declaration of Rights."  Commonwealth v. Walker, 460 Mass. 590, 599, n.13 (2011).  "Because the standard for admissibility of an identification under the Massachusetts Constitution is more favorable to a defendant than the standard under the United States Constitution," we need not consider any Federal constitutional claims here.  Ibid.

procedure that included the defendant, after Tang had failed to identify him at the showup, "may not be ideal, but was warranted where the defendant had apparently altered his appearance since the time of the crime."

We agree with the motion judge.  The evidence before him at the suppression hearing strongly suggested that the defendant had shaved immediately before he answered the door to his home in the early morning hours of April 18, 2013.  In addition, Tang indicated at the showup that the reason he could not identify the defendant as the robber was the difference in the very feature that the defendant had apparently altered.  Under these circumstances, it was appropriate for the police to conduct a second identification procedure.

Moreover, Massachusetts courts have "declined to adopt 'a per se exclusionary rule condemning as constitutionally infirm all subsequent identifications of a defendant by any witness who had previously failed to select the defendant.'"  Commonwealth v. Paszko, 391 Mass. 164, 171 (1984), quoting from Commonwealth v. Lacy, 371 Mass. 363, 369 (1976).  Even where the defendant's photograph is the only one duplicated in multiple arrays, the resulting out-of-court identification is not necessarily inadmissible.  See Commonwealth v. Carter, 475 Mass. 512, 518

(2016).[4]  See also Paszko, supra at 168-169; Commonwealth v.

Holland, 410 Mass. 248, 254 (1991).  Moreover, the Supreme

Judicial Court has upheld the admission of identification

evidence in circumstances similar to those presented here.[5]  See

Commonwealth v. Forte, 469 Mass. 469, 476 (2014) (witness made

identification from photo array after failing to identify

defendant at showup and then being shown videotape footage from

security camera).[6]  Here, the fact that Tang participated in

_____

[4] In Carter, decided a few months after the defendant's
trial, the Supreme Judicial Court stated, "We discourage the use
of repeated arrays containing a suspect's photograph, . . . and
the use of repeated arrays could make identification procedures
unnecessarily suggestive if the police do not have good cause
for the use of such procedure."  475 Mass. at 518.  Even though
the defendant in Carter was the only person depicted in two
arrays, the court concluded there was good cause for the
procedure because the second array was shown to each of two
witnesses only after each one "commented that the perpetrator's
hair was shorter than was depicted in the photographs used in
the first array."  Ibid.

[5] At oral argument, the defendant's attorney suggested that
a photo array excluding the defendant's photo should have been
shown to Tang in between the showup and the array containing the
defendant's photo, in order to insulate the array procedure from
the risk that Tang would remember the defendant from the showup
and not from the crime.  The motion judge considered this
argument, but correctly stated that such a procedure was not
constitutionally required.  See Commonwealth v. Martin, 447
Mass. 274, 280 (2006) ("Failure of the police to pursue
alternate identification procedures does not in itself render an
identification unduly suggestive").  See also Commonwealth v.
Dew, 478 Mass. 304, 308 (2017).

[6] In Forte, 469 Mass. at 476, the court stated that the
failed showup "actually could assist the defendant by casting

multiple identification procedures did not render the identification "unnecessarily suggestive and conducive to irreparable misidentification." Borgos, 464 Mass. at 32 (quotation omitted).

b. "Cropping" of the photo. Next, the defendant contends that the photo array was impermissibly suggestive because Ward and Tang covered the upper head and ears of the defendant's photograph only -- and not the other six. The defendant's reliance on Borgos, supra, is, however, misplaced. There, in showing the same photographic array to three out of four witnesses, the administering officer covered the defendant's hair with a paper after an initial identification by the witness. Id. at 32-33. The Supreme Judicial Court rejected the argument that covering a part of the photograph was unnecessarily suggestive, noting that this procedure did not occur "until after a positive identification had been made by the witness." Id. at 34.

The defendant argues that the initial identifications in Borgos, supra, were unequivocal, as compared to Tang's less certain initial selection of the defendant's photo -- and, therefore, we should read Borgos as supporting his position.

doubt on the defendant's identity as the perpetrator." The same could be said here.

However, even if the defendant is correct that the witnesses in Borgos were somewhat less equivocal in their initial selection of the suspect's photo than Tang, that does not mean that the procedure used here was impermissibly suggestive. Nothing in Borgos is to the contrary. Tang testified at the suppression hearing that, after he picked out the defendant's photograph on his own, he told Ward he was having trouble making an identification because the robber had been wearing a hat and a hooded sweatshirt.[7] Ward's use of the paper to cover the upper head in the defendant's photograph was a direct response to Tang's statement.[8] Tang then, independently, covered the ears in the photo with his own hands. This procedure was not unnecessarily suggestive, and any equivocation in Tang's initial identification went to the weight of the evidence, not its admissibility. See Commonwealth v. Sullivan, 436 Mass. 799, 806-807 (2002) ("The tentative nature of an identification does not disqualify it from admission, but goes to its weight").

---

[7] Tang also testified that he singled out the defendant's photo "[b]ecause it looked closest to it . . . [t]he facial hair and the jaw structure."

[8] In addition, the photo array was administered by a police officer who had no prior involvement in the case. See Commonwealth v. Silva-Santiago, 453 Mass. 782, 797 (2009) ("double-blind" procedure, where administering officer does not know identity of suspect, "is the better practice"). See also Mass. G. Evid. § 1112(b)(1) (enumerating factors judge should consider regarding photo array).

c. Reliability. Finally, the defendant urges that, even if police procedures were not unnecessarily suggestive, Tang's out-of-court identification of the defendant should have been excluded as unreliable pursuant to Johnson, 473 Mass. at 604 n.4. Johnson, however, does not assist the defendant for two reasons.

First, the better view of the law existing at the time of the hearing on the motion to suppress is correctly reflected in the judge's ruling that he was not authorized to consider the reliability of Tang's identification once he had determined that police procedures were not unnecessarily suggestive. See Commonwealth v. Cavitt, 460 Mass. 617, 632 (2011), quoting from Watson, 455 Mass. at 251 ("Where an identification procedure is not impermissibly suggestive, a pretrial identification is admissible without any further showing"). See also Paszko, 391 Mass. at 172; Commonwealth v. Warren, 403 Mass. 137, 140 (1988); Commonwealth v. Ross, 426 Mass. 555, 560 (1998). Johnson was decided nearly two years after the judge issued his decision on the defendant's motion to suppress, and a few weeks after his trial. See Commonwealth v. Crayton, 470 Mass. 228, 245 (2014) (judge did not abuse discretion where admission of in-court identification was in accord with then-existing case law); Commonwealth v. Bastaldo, 472 Mass. 16, 21-23 (2016) (trial judge did not err in giving jury instruction based on law at

time of trial).  In any event, <u>Johnson</u> did not alter
longstanding authority holding that assessment of an eyewitness
identification is for the jury where the police procedures did
not violate the defendant's constitutional rights.[9]

Second, to the extent that the motion judge in this case
was authorized to consider reliability, any exercise of that
authority is reviewable only for abuse of discretion and is not
subject to the independent appellate review afforded a legal
conclusion regarding constitutional rights.  See <u>Johnson</u>, 473
Mass. at 602.  See also <u>Commonwealth</u> v. <u>Thomas</u>, 476 Mass. 451,
465 (2017).[10]  Here, in an abundance of caution, the motion judge

---

[9] In <u>Johnson</u>, the court was not concerned with police
procedures that might render an identification unnecessarily
suggestive.  There, relying on <u>Commonwealth</u> v. <u>Jones</u>, 423 Mass.
99, 107 (1996), the court explained that, where the police had
no involvement in a suggestive confrontation between a witness
and a defendant, the identification could be suppressed
nonetheless in an exercise of the court's broad authority, to
exclude evidence where its probative value is substantially
outweighed by the danger of unfair prejudice.  See <u>Johnson</u>,
<u>supra</u> at 599; Mass. G. Evid. § 403 (2017).  The authority
described in <u>Johnson</u> is based on "common law principles of
fairness," and not the art. 12 considerations undergirding the
"unnecessarily suggestive" criterion.  <u>Id</u>. at 599-600.  The
<u>Johnson</u> decision did not, as the defendant argues, alter the
existing constitutional analysis applicable to identification
procedures conducted by the police, as had been contemplated
five years earlier in <u>Walker</u>, 460 Mass. at 606.

[10] In <u>Dew</u>, 478 Mass. at 307, the Supreme Judicial Court
reinforced this distinction.  There, the court wrote that
whether there was "good reason" for an inherently suggestive
showup procedure (a question not in issue here because the
defendant does not challenge the original, unsuccessful showup)

considered reliability and found that, even if a reliability analysis were legally available, "the identification would not be considered so unreliable as to require exclusion where suppression was not constitutionally compelled."[11]  Having reviewed the record thoroughly, we see no abuse of discretion in the judge's finding.

2.  <u>Trial identification</u>.  The defendant argues that Sylva, the bar manager, should not have been permitted to identify the defendant in court at the trial because he had not previously participated in an out-of-court identification procedure.  The suggestion that the police should have subjected Sylva to an out-of-court identification procedure is unreasonable,

---

is "a question of law to be decided by an appellate court, based on facts found by the motion judge."  <u>Ibid</u>.  In considering the judge's discretionary determination under "common law principles of fairness" to allow an in-court identification, however, the court reviewed that evidentiary ruling for an abuse of discretion.  <u>Id</u>. at 315 (quotation omitted).  See <u>id</u>. at 322 & n.5 (Gants, J., concurring).

[11] The judge's decision to reach the issue was prescient. Just a few months after the defendant's trial, in a case involving multiple photographic arrays administered by police, the Supreme Judicial Court wrote:  "Our conclusion that the identifications were not 'unnecessarily suggestive' does not end the inquiry.  Even if otherwise admissible, a judge may suppress identification evidence if 'its probative value is substantially outweighed by the danger of unfair prejudice.'"  <u>Carter</u>, 475 Mass. at 518, quoting from <u>Johnson</u>, 473 Mass. at 599.  More recently, in considering an in-court eyewitness identification, the Supreme Judicial Court cited <u>Carter</u>, and stated broadly that "[a] judge applying common law principles of fairness has the discretion to exclude unreliable eyewitness identification testimony."  <u>Dew</u>, 478 Mass. at 315 (quotation omitted).

considering that Sylva's prior familiarity with the defendant was the source of the police officers' original identification of the defendant as a person of interest in the investigation.

The defendant is correct that the "good reason" requirement announced in Crayton, 470 Mass. at 241-242, did not apply to Sylva's testimony because this requirement explicitly applies only to in-court identifications by eyewitnesses who were present during the commission of the crime.  See Commonwealth v. Collins, 470 Mass. 255, 265 (2014).  There was, however, no harm in the prosecutor's bringing a motion in limine pursuant to Crayton and Collins concerning Sylva's proposed testimony.  This could only have benefited the defendant.  Moreover, to the extent the "good reason" standard was properly applied to Sylva's proposed testimony, his familiarity with the defendant before the crime satisfied that requirement.  See Crayton, supra at 242.

For all of these reasons, we are satisfied that, the Commonwealth's identification evidence was properly admitted and was sufficient to support the jury's verdicts.

Judgments affirmed.