TRAVIS, COMMONWEALTH vs., 100 Mass. App. Ct. 607

 
 COMMONWEALTH vs. ANTHONY TRAVIS.

100 Mass. App. Ct. 607
 September 9, 2021 - January 14, 2022

Court Below: Superior Court, Suffolk County
Present: Vuono, Blake, & Englander, JJ.

 

Constitutional Law, Identification. Due Process of Law, Identification. Identification. Practice, Criminal, Motion to suppress.

This court concluded that the identifications of the criminal defendant as the assailant by the two victims of an armed assault and carjacking during separate one-on-one showup identification procedures that were conducted following the defendant's apprehension at the scene of an accident, in view of the damaged car while the defendant was receiving medical treatment, after the defendant crashed the car that he had allegedly stolen at gunpoint from one of the victims, were not so unnecessarily or impermissibly suggestive that their admission at trial would deprive the defendant of his right to due process, where good reason existed to conduct a showup identification (i.e., the police were investigating violent crimes that involved a firearm, and a prompt identification served to limit risk to the public and to avoid the escape of a dangerous suspect; the police apprehended a suspect that matched the description provided by the victims shortly after the crimes, and an immediate confirmation while the victims' recollections were fresh was useful if not critical to the investigation; and the police needed to continue their search expeditiously if the witnesses indicated that the suspect was not the perpetrator) [612-614]; and where the defendant failed to show that the circumstances presented special elements of unfairness indicating a desire on the part of the police to "stack the deck" against him (in that the identification procedures were not rendered unnecessarily suggestive on account of the number of police officers, emergency technicians, and safety vehicles present at the scene; the showup identification was not necessarily rendered impermissibly suggestive on the ground that the the police advised one of the victims that she was going to view a suspect; the fact that one victim did not fully understand the showup advisements given by police while the other did not understand them at all did not render the procedures unnecessarily suggestive; the defendant did not introduce any evidence at the hearing that the police could have removed the damaged vehicle before conducting the showup, or that it could have been conducted elsewhere; the presence of the damaged car could not be attributed to any police wrongdoing; and nothing suggested that either victim identified the defendant due to the presence of the car or other suggestive factors, but rather both victims identified the defendant as the assailant by his appearance, noting that they recognized his face and clothing) [614-616].

 Page 608 

INDICTMENTS found and returned in the Superior Court Department on January 29, 2019.

A pretrial motion to suppress evidence was heard by Jackie A. Cowin, J.

An application for leave to prosecute an interlocutory appeal was allowed by David A. Lowy, J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court.

Darcy A. Jordan, Assistant District Attorney, for the Commonwealth.

Patrick Levin, Committee for Public Counsel Services, for the defendant.

 VUONO, J. A Suffolk County grand jury returned indictments charging the defendant with various offenses in connection with an armed assault and carjacking. [Note 1] The victims were two women, both of whom identified the defendant as the assailant during separate one-on-one "showup" identification procedures. As we discuss in more detail below, the defendant was apprehended after he crashed into a telephone pole while driving the car that he allegedly stole from the victims at gunpoint. The showup was conducted at the scene of the accident in view of the damaged car while the defendant was receiving medical treatment. The defendant filed a motion to suppress the identifications, claiming that the identification procedures were unnecessarily suggestive. Following an evidentiary hearing, the motion was allowed by a judge of the Superior Court. The Commonwealth then sought leave to appeal the judge's decision. A single justice of the Supreme Judicial Court allowed the application for interlocutory appeal and transferred the case to this court. We conclude that although the identification procedures had elements of suggestiveness, they were not so unnecessarily or impermissibly suggestive such that their admission at trial would deprive the defendant of his right to due process. We therefore reverse the order allowing the motion to suppress.

Background. We recite the relevant facts found by the motion judge with some additions from the testimony presented at the hearing on the defendant's motion to suppress. In the early afternoon of October 23, 2018, Brenda Marquez and Nilza Santos 

 Page 609 

 were on Dix Street in the Dorchester section of Boston to inquire about a potential cleaning job. They arrived in separate cars. Marquez went to speak to Santos, who remained sitting in her car, a grey Toyota Venza. Marquez was standing by the open driver's side door of Santos's car when a man, later identified as the defendant, approached her from behind. The defendant pointed a small black gun at the women and said repeatedly, "get out." Santos did so and as the women moved to the side, the defendant got into the car and drove away.

Marquez immediately called 911 from a cellular telephone to report the crime. Marquez's native language is Spanish and although she used an interpreter when she testified at the hearing, the motion judge found that she "speaks and understands a fair amount of English." In fact, Marquez described the incident to the dispatcher in English, but needed an interpreter (secured by the dispatcher) to provide certain details. While Marquez was on the phone, Officer James Verderico arrived. Marquez spoke to him in English and gave a physical description of the assailant and described the clothes he was wearing. [Note 2] Officer Verderico then relayed the information to the dispatcher.

A report with a description of the suspect and Santos's vehicle, including the license plate number, the suspect's direction of flight, and the fact that the suspect was armed, was broadcast over the police radio and was heard by State Police Trooper John Joyce, who was working a detail a few miles away. Within minutes of hearing the broadcast, Trooper Joyce saw a vehicle matching the description of the stolen car and followed it. The defendant accelerated and made a number of turns. The pursuit continued until the defendant ran a red light, lost control of the vehicle, and crashed into a telephone pole, which came loose from its foundation and leaned partially on the hood of the vehicle. Following the crash, the defendant left the car and attempted to run, but was apprehended quickly and arrested.

Meanwhile, Marquez and Santos were waiting at the scene of the carjacking with Officer Verderico. By this time, two additional officers, Detective James Harte and Sergeant Frederick MacDonald, had arrived. About sixteen minutes after Marquez had called 911, the officers received a report that the suspect had crashed the vehicle and was in custody at a location approximately

 Page 610 

 four miles away. The motion judge found that the officers "told the women that they had a potential suspect in custody, and that they were going to take them to see if they could identify him." She further found that "[b]oth women understood that they were going to see the person whom police believed was the carjacker." The victims were then separately driven to the location of the accident; Marquez was transported by Detective Harte and Santos by Sergeant MacDonald.

Detective Harte stopped along the way and read the following advisements to Marquez from a preprinted card used by the Boston police to explain showup procedures: "1. I am taking you to look at someone. 2. This person may or may not be the perpetrator, and the investigation will continue, whether or not an identification is made. 3. It is just as important to free the innocent from suspicion as it is to identify offenders. 4. I will be asking you to make a statement of certainty, in your own words, if you make an identification." [Note 3] Detective Harte spoke in English. Upon completing the advisements, he asked Marquez if she understood what he had just read, and she replied that she did. The judge found, however, that Marquez had only understood the first two advisements. [Note 4]

Sergeant MacDonald read the same advisements, in English, to Santos from a similar card before they arrived at the scene. With respect to Santos, whose native language is Portuguese, the judge found that Santos did not understand any of the advisements because she "understands very little English." [Note 5]

When the officers arrived at the scene of the accident with Marquez and Santos, ten police officers, some in uniform and some in plainclothes, firefighters, and emergency medical personnel were present. The judge found that "[s]everal police

 Page 611 

vehicles, at least one firetruck and an ambulance were also present, and a helicopter hovered overhead. The defendant was on the opposite side of the [two]-lane street from where the officers parked, either sitting or lying on the ground while receiving treatment from two [emergency medical technicians]. ... The defendant was 'probably' cuffed from behind, but the women could not see the cuffs. Between three and six police officers, more than one of whom was in uniform and all of whom displayed badges, were standing around the defendant in a semi-circle. Santos'[s] totaled vehicle was in the same location where it had crashed into the telephone pole," about thirty feet away.

Detective Harte walked Marquez toward the group and "[a]s soon as Marquez saw the defendant, she said 'that was him.' " In response to Detective Harte's questions, Marquez identified "the man on the floor" as "[t]he guy who took the car." Marquez testified that she recognized the defendant as the person who had "robbed" her by his face and the clothes he was wearing. The exchange was in English. Detective Harte did not ask Marquez how certain she was of her identification. [Note 6]

Thereafter, Sergeant MacDonald arrived with Santos and directed her attention to the group standing around the defendant. Like Marquez, Santos saw the defendant and positively identified him without hesitation. Santos immediately stated, "That's him, the guy on the floor, the sidewalk. I remember his face and black jacket." Santos testified that she knew the man was the same person who took her car because she "recognized the beard, the color, and ... clothing." Sergeant MacDonald also did not ask Santos to make a statement of certainty.

At the motion hearing, the defendant argued that the identifications should be suppressed because the police did not have a good reason to conduct a showup and the procedures utilized were unduly suggestive. He claimed that the showup was unnecessary because the police knew that they had arrested the right person and that less suggestive alternative identification procedures were available. Next, he asserted that the procedures utilized by the police were unnecessarily suggestive because (1) the victims were told that they were being taken to view the suspect when they did not fully understand the advisements, (2) the 

 Page 612 

defendant was surrounded by police officers and numerous police cars and safety vehicles were present, and (3) Santos's damaged car was in plain view.

In a detailed memorandum of decision and order, the motion judge rejected the defendant's first argument and agreed with his second one. She ruled that although good reason existed to conduct a showup, [Note 7] the procedures at issue, "considered in [their] totality, so needlessly added to the inherent suggestiveness of the showup that suppression is warranted." The judge reasoned that the presence of numerous police officers, public safety vehicles, and a helicopter did not render the showup unnecessarily suggestive, but that those factors in combination with "[t]he sight of Santos'[s] car, totaled, just feet away from the defendant as he was surrounded by law enforcement only [thirty] minutes after the carjacking, simply created too high a risk that the women would assume that the man they were looking at was the assailant based on the circumstances in which they observed him, rather than because they actually recognized him from the attack." The judge further noted that the risk of an irreparable mistaken identification was compounded by the fact that neither victim fully understood the instructions given to them by the officers prior to making their identifications.

Discussion. "When reviewing a motion to suppress evidence, we adopt the motion judge's subsidiary findings of fact absent clear error, but we independently determine the correctness of the judge's application of constitutional principles to the facts as found." Commonwealth v. Catanzaro, 441 Mass. 46, 50 (2004). The Commonwealth contends that the motion judge erred in suppressing the identification evidence primarily because she placed too much weight on the presence of Santos's damaged car as an unduly suggestive element. The Commonwealth also asserts that the judge improperly concluded that the victims' "confusion" with respect to the pre-showup advisements increased the level of suggestiveness.

As an initial matter, we observe that our cases have repeatedly 

 Page 613 

 held that one-on-one showup identifications are generally disfavored due to their inherently suggestive character. See Commonwealth v. German, 483 Mass. 553, 557 (2019). However, "a showup identification conducted in the immediate aftermath of a crime is not necessarily impermissible." Id. "In order for the results of a showup identification to be excluded, a defendant is required to prove, by a preponderance of the evidence, that the showup was so unnecessarily suggestive and conducive to irreparable mistaken identification as to deny [the defendant] due process of the law. ... If the identification passes muster under this test, then it is for the jury to decide what weight to give to the identification" (quotation and citations omitted). Commonwealth v. Dew, 478 Mass. 304, 306-307 (2017).

In general, a defendant may prove that a showup identification procedure is unnecessarily suggestive by establishing that the police did not have good reason to undertake a showup procedure, or by establishing that the officers who did so utilized "special elements of unfairness" indicating a desire to "stack the deck against the defendant" (citations omitted). German, 483 Mass. at 558-559.

We agree with the motion judge that good reason existed to conduct a showup identification. The following factors are relevant to the inquiry whether good reason exists: "[1] the nature of the crime involved and corresponding concerns for public safety; [2] the need for efficient police investigation in the immediate aftermath of a crime; and [3] the usefulness of prompt confirmation of the accuracy of investigatory information, which, if in error, will release the police quickly to follow another track." Commonwealth v. Austin, 421 Mass. 357, 362 (1995).

Here, as the motion judge observed, the police were investigating a violent crime that involved a firearm, "and a prompt identification served to limit risk to the public and to avoid the escape of [a] dangerous suspect[ ]." Commonwealth v. Phillips, 452 Mass. 617, 629 (2008). The police apprehended a suspect that matched the description provided by the victims shortly after the crime and an immediate confirmation while the victims' recollections were fresh was useful if not critical to the investigation. See id. Most notably, if the witnesses indicated that the suspect was not the perpetrator, the police needed to continue their search expeditiously. In sum, application of the Austin factors to the circumstances presented here justified the showup identification procedures.

 Page 614 

 In reaching our conclusion, we reject, as did the motion judge, the defendant's argument that the police lacked good reason to conduct a showup identification because they already had probable cause to arrest the defendant and had done so at the time. See Dew, 478 Mass. at 308 (although probable cause existed to arrest defendant prior to showup, good police practices warranted confirmation of suspect's identity).

Nor are we persuaded, as the defendant contends, that the showup was unnecessary because other less suggestive alternatives were available. The defendant presented no evidence regarding the feasibility of utilizing a different identification procedure; furthermore, even if we were to assume that alternatives were available, the "[f]ailure of the police to pursue alternate identification procedures does not in itself render an identification unduly suggestive." Commonwealth v. Martin, 447 Mass. 274, 280 (2006). The question is whether the police acted permissibly and not whether another approach was available. See id. Here, the police acted reasonably and, therefore, the motion judge properly ruled that the police had good reason to conduct the showup identification.

However, we reach a different conclusion from the motion judge on the question whether the defendant has shown that the circumstances presented "special elements of unfairness, indicating a desire on the part of the police to 'stack the deck' against" him. German, 483 Mass. at 559, quoting Dew, 478 Mass. at 317. We begin our discussion with the manner in which the showup was conducted. First, the identification procedures were not rendered unnecessarily suggestive on account of the number of police officers, emergency technicians, and safety vehicles that were present at the scene. The heavy presence of police and safety officers was justified by the nature of the crime, the pursuit of an armed suspect, and the fact that the defendant was injured. More importantly, the number of persons readily identified as police officers that were surrounding the defendant at the time the victims viewed him - between three and six - was not excessive in the circumstances. See, e.g., Commonwealth v. Meas, 467 Mass. 434, 438, 441-442, cert. denied, 574 U.S. 858 (2014) (showup identification not rendered unnecessarily suggestive where there were at least six uniformed police officers in area of showup as well as multiple police cruisers; suspects were placed in line and handcuffed). See also German, supra at 556 (defendant handcuffed and standing against wall amidst several police officers while area was illuminated by spotlight of police cruiser).

 Page 615 

 Second, contrary to the defendant's argument, a showup identification is not necessarily rendered impermissibly suggestive because the police advise an eyewitness that she is going to view a suspect. "A witness ordinarily expects to be asked to make an identification of someone who either fits the description of the suspect or is suspected to have been involved in the reported crime." Phillips, 452 Mass. at 628. See Meas, 467 Mass. at 442-443. Moreover, the police said nothing to either Marquez or Santos that indicated their own degree of certainty regarding the identity of the suspect. See id., citing Commonwealth v. Williams, 399 Mass. 60, 67 (1987) ("no due process violation where police officer expressed confidence that he had 'got the guys'").

Third, the fact that Marquez did not fully understand the showup advisements while Santos did not understand them at all did not render the showup identification procedures unnecessarily suggestive. It bears noting that although the pre-showup instructions were in use by the Boston police department at the time of the showup at issue here, such instructions were not required to be given at that time. The Supreme Judicial Court expanded the protocol to be followed before photographic array identifications to showup identifications after the events in question here. See German, 483 Mass. at 562. In any event, the absence of recommended protocols goes to the weight of the identifications, not their admissibility. See Commonwealth v. Thomas, 476 Mass. 451, 464 (2017); Commonwealth v. Carter, 475 Mass. 512, 518 (2016).

Last, we reject the defendant's contention that the police inserted a special element of unfairness by conducting the showup in view of Santos's damaged car. Certainly, the damaged car was a suggestive factor, but it was not a circumstance created by the police. At the time the witnesses arrived, the defendant was being attended to by medical personnel a short distance from the crash. There is no factual basis from which to conclude that the police conducted the showup at the accident scene in view of the car because they desired to "stack the deck" against the defendant. The defendant, who bore the burden of proof, did not introduce any evidence at the hearing that the police could have removed the damaged vehicle before conducting the showup, or that the identification procedure could have been conducted elsewhere. In addition, as the Commonwealth asserts, the presence of the damaged

 Page 616 

 car cannot be attributed to any police wrongdoing. [Note 8] Contrast Commonwealth v. Moon, 380 Mass. 751, 758-759 (1980) (special elements of unfairness occurred in manner in which police conducted showup, including showing victim single photograph taken from vehicle associated with crime). Moreover, there is nothing to suggest that either victim identified the defendant due to the presence of the car or other suggestive factors. Both victims identified the defendant as the assailant by his appearance, noting that they recognized his face and clothing. [Note 9]

 Page 617 

 Accordingly, we conclude that the admission of the identification evidence at trial will not violate the defendant's right to due process of the law. The order allowing the defendant's motion to suppress is reversed.

So ordered.

FOOTNOTES
[Note 1] Specifically, the indictments charged the defendant with armed robbery, armed carjacking, and two counts of assault by means of a dangerous weapon, in violation of G. L. c. 265, §§ 17, 21A, and 15B (b), respectively. 

[Note 2] The judge found that "Marquez described the suspect as a black male, approximately [forty-five] years old with a large build, black hair and a beard, and wearing a black hooded sweatshirt and dark pants." 

[Note 3] The advisements are set forth in Rule 330 of the Boston Police Department Rules and Procedures regarding the collection and preservation of eyewitness identification evidence. 

[Note 4] The Commonwealth claims that this finding is clearly erroneous because it is based on what Marquez was able to articulate when she testified at the hearing and not on what she actually understood at the time Detective Harte read the advisements to her. Because we conclude that this finding is inconsequential, we need not address the issue further. 

[Note 5] The motion judge noted that Santos testified that Sergeant MacDonald did not give her any instructions, but the judge did not credit this testimony because Santos "was still 'in shock' from the carjacking when" she was driven to the scene. The judge instead credited Sergeant MacDonald, who testified that he read the advisements to Santos. 

[Note 6] There was conflicting testimony regarding this point. As the judge noted, "Marquez testified that Harte did ask her how certain she was of the identification, and that she said she was '100% sure.'" However, the judge credited Detective Harte's testimony that he did not ask the question. 

[Note 7] Specifically, the motion judge observed that "[t]he crime under investigation was one of violence, involving the carjacking of two individuals at gunpoint. One of the victims immediately called 911 and described the suspect to the responding officers. Within [sixteen] minutes of the 911 call, the police tracked a likely suspect, and the showup was conducted within about [thirty] minutes of the [911] call, allowing for confirmation while the witnesses' recollection of the assailant was fresh 'and before other images crowd[ed] in to distort the original picture.' Commonwealth v. Amaral, 81 Mass. App. Ct. 143, 148 (2012)." 

[Note 8] Relying on Commonwealth v. McCray, 93 Mass. App. Ct. 835 (2018), the Commonwealth also argues that the identification procedure cannot be found to be unnecessarily suggestive due to the presence of the damaged car because the police did not "orchestrate" the showup to include this suggestive element. Reliance on McCray is misplaced. In McCray, the identification at issue was not the product of police activity. In that case, the witness, instead of following a dispatcher's instructions to wait for an officer, drove by and observed the defendant being arrested by the police. See McCray, supra at 840-841. In the absence of police activity or wrongdoing, we analyzed the admissibility of the identification under common law principles of fairness. See id. at 841. That principle does not apply here where the identification procedures were conducted by the police. See Commonwealth v. Johnson, 473 Mass. 594, 599 n.2 (2016) (review of admissibility of identification testimony under common law principles of fairness is limited to situations where identification is not product of police activity or wrongdoing). 

[Note 9] The defendant argues for the first time, in response to the Commonwealth's appeal, that even if the showup identification procedures were not unnecessarily suggestive, the identifications were unreliable and should be suppressed because their probative value was substantially outweighed by the danger of unfair prejudice. See Commonwealth v. Carter, 475 Mass. 512, 518 (2016) (even if out-of-court identification is not unnecessarily suggestive, judge may suppress identification "if its probative value is substantially outweighed by the danger of unfair prejudice" [quotation and citation omitted]). See also Johnson, 473 Mass. at 599; Commonwealth v. Alcide, 472 Mass. 150, 166 (2015) ("A judge's authority to exclude severely unreliable identification testimony is closely related to his or her more general 'discretion to exclude evidence that is more prejudicial than probative' " [citation omitted]). The problem with this argument is that it was not presented to the motion judge. In his motion to suppress and at the hearing, the defendant argued that the identification procedures violated his right to due process. Consequently, the judge did not focus on the question whether the identification evidence should be excluded on the separate and independent ground that the probative value of the identifications was outweighed by the danger of unfair prejudice. Because an analysis of the probative value of an identification depends on the strength of its source independent of the suggestive circumstances of the identification and, as a result, requires a factual inquiry that must be undertaken in the trial court, see Johnson, 473 Mass. at 601, we cannot evaluate this argument. 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.