COMMONWEALTH *vs.* CRAIG SHIPPEE.

No. 11-P-1864.

Worcester. February 4, 2013. - May 31, 2013.

Present: VUONO, RUBIN, & SULLIVAN, JJ.

*Indecent Assault and Battery. Armed Assault with Intent to Murder. Assault with Intent to Maim. Assault by Means of a Dangerous Weapon. Practice, Criminal,* Instructions to jury, Indictment, Duplicative convictions, Assistance of counsel. *Evidence,* Relevancy and materiality.

At the trial of indictments charging the defendant with, inter alia, indecent assault and battery, no substantial risk of a miscarriage of justice arose from the failure of the judge to instruct the jury, sua sponte, that the victim must be alive at the time of the indecent assault and battery, where the defendant did not rely on such a theory at trial. [660-661]

At a criminal trial, no error arose in the admission in evidence of a photograph of the victim while she was alive; further, although testimony presented by the victim's sister concerning the victim's character was not properly admitted, under the circumstances of the case, the error did not influence the jury, or had but very slight effect. [662-663]

At the trial of indictments charging the defendant with, inter alia, assault and battery by means of a dangerous weapon, no substantial risk of a miscarriage of justice arose from the judge's failure to instruct the jury on the defendant's right to use deadly force, where the judge was not obligated to instruct on a theory that was at odds with, and would potentially undermine, the defense presented at trial; and where, in any event, the defendant was not entitled to an instruction on the use of deadly force in self-defense. [663-664]

At the trial of indictments charging the defendant with, inter alia, assault with intent to maim, a claim that the indictment was defective was waived, where the defendant did not request a bill of particulars. [664-666]

A criminal defendant's conviction of assault and battery by means of a dangerous weapon was not a lesser included offense of his conviction of assault with intent to maim, where actual battery is an element of the former offense but not the latter, and where proof of an intent to cause the particular forms of resultant physical injuries specified in G. L. c. 265, § 14, is an element of the latter offense but not the former. [666-667]

There was no merit to a criminal defendant's claim of ineffective assistance of counsel. [667-668]

INDICTMENTS found and returned in the Superior Court Department on September 25, 2008.

The cases were tried before *John S. McCann*, J.

*Michael J. Hickson* for the defendant.

*Donna-Marie Haran*, Assistant District Attorney, for the Commonwealth.

SULLIVAN, J. The charges in this case arose from events which occurred on the evening of September 12, 2008, in an abandoned building on Main Street in Worcester. The defendant was convicted of indecent assault and battery on a woman named Anne,[1] who died later that night in a fire that consumed the building. He was also convicted of armed assault with intent to kill (as a lesser included offense of armed assault with intent to murder), assault with intent to maim, and assault and battery by means of a dangerous weapon on a second occupant of the building, Raul Robles Santiago.[2] On appeal, the defendant contends that (1) the judge erred by failing to instruct, sua sponte, that the Commonwealth was required to prove that Anne was alive at the time the defendant was alleged to have committed an indecent assault and battery, (2) the judge erred in allowing the introduction of prejudicial "sympathy" evidence concerning Anne's life and character, (3) the judge erred by failing to instruct the jury on the defendant's right to use deadly force against Santiago, (4) an indictment was defective, (5) the conviction of assault and battery by means of a dangerous weapon was duplicative of the conviction of assault with intent to maim, and (6) counsel was ineffective. We affirm.

*Indecent assault and battery instruction.* The defendant contends that the failure of the judge to instruct the jury, sua sponte, that the victim must be alive at the time of an indecent assault and battery in order to convict under G. L. c. 265, § 13H, warrants reversal of that conviction. At trial, the defendant's theory was that while he was with her, Anne was alive, but inebriated, and needed assistance in getting to another room that was being used as a bathroom. Santiago testified that when he woke to find an inert and apparently unconscious Anne lying on a mattress with her pants around her ankles, the defendant was

---

[1] A pseudonym.

[2] The defendant was also convicted of making a false report of a crime, but makes no separate argument with respect to this conviction. He was acquitted of assault with intent to rape, G. L. c. 265, § 24.

stretched over her "pumping up and down." In statements he made to the police, the defendant maintained that he was only putting Anne back on the mattress after returning from the other room, and that her pants were down because she had defecated on herself. Trial counsel did not request that the jury be instructed that they had to find that Anne was alive at the time of these events, nor did counsel object to the absence of such an instruction. We therefore review for a substantial risk of a miscarriage of justice. *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967). See Mass.R.Crim.P. 24(b), 378 Mass. 895 (1979).

"It was not incumbent upon the judge sua sponte to instruct the jury on a theory upon which the defense had placed no reliance at trial." *Commonwealth* v. *Hakkila*, 42 Mass. App. Ct. 129, 130-131 (1997).[3] There are many sound tactical reasons why the defendant would not have suggested to the jury that he was present when Anne was dead, or that he engaged in the indecent touching of a dead body. The contention that the judge should have done so when counsel did not is unpersuasive. "[I]f the judge had given such an instruction on [his] own, [he] might well have interfered with the defendant['s] right to present [his] chosen defenses." *Commonwealth* v. *Norris*, 462 Mass. 131, 144 (2012). "The consequences of trial tactics may not be converted after conviction into alleged errors by the judge." *Commonwealth* v. *Roderiques*, 462 Mass. 415, 428 (2012), quoting from *Commonwealth* v. *Simcock*, 31 Mass. App. Ct. 184, 196 (1991).[4]

---

[3]"The theory on which a case is tried below cannot be changed on appeal." *Commonwealth* v. *James*, 424 Mass. 770, 789 n.31 (1997). See *Commonwealth* v. *Merola*, 405 Mass. 529, 539 (1989).

[4]In response to the defendant's arguments, the Commonwealth argues that in a felony-murder prosecution, where rape and murder are "one continuous event, it does not matter whether the victim's death preceded or followed the sexual attack." *Commonwealth* v. *Waters*, 420 Mass. 276, 280 (1995). Here, however, there was no physical evidence of rape or of cause of death, the defendant was not charged with Anne's death or rape, and the theory of a "single continuous act" is inapplicable. We need not decide whether G. L. c. 265, § 13H, contemplates an attack only upon a living victim, however, because even if we accepted the defendant's construction of the statute (as to which we express no opinion), the judge was not required to give the instruction sua sponte in this case. See *Commonwealth* v. *Hakkila*, 42 Mass. App. Ct. at 130-131.

*"Sympathy" evidence.* At trial, the prosecution introduced a photograph of Anne taken some ten years before trial. In addition, her sister testified that Anne was a mother of three, and that "[s]he was "very caring with people. She had a heart of gold. If you needed something, she would help you with it. She was great with my children. She was just . . . a good person." The defendant objected to the introduction of the photograph and to the testimony before the witness was heard.[5] The judge allowed the evidence, but noted the defendant's objection. Viewing the objection "in the context of the trial as a whole," the objection was preserved. See *Commonwealth* v. *Jones*, 464 Mass. 16, 19 n.4 (2012). We therefore review the admission of the testimony and the photograph under the prejudicial error standard. See *Commonwealth* v. *Aviles*, 461 Mass. 60, 66-67 (2011). See also *Commonwealth* v. *Jones, supra.*

There was no error in the admission of the photograph. In the absence of Anne's testimony, it was not improper to put a human face on the proceeding. See *Commonwealth* v. *Degro*, 432 Mass. 319, 322-323 (2000). See also *Commonwealth* v. *Andrews*, 403 Mass. 441, 450-451 (1988); *Commonwealth* v. *Harbin*, 435 Mass. 654, 656-657 (2002). The defendant argues for the first time on appeal that the photograph of Anne in a state of good health was inconsistent with the notion that she was dead at the time of the indecent assault and battery. Since this theory was not argued to either the judge or the jury at trial, no error or prejudice could result.

A closer question is presented by the sister's testimony concerning Anne's character, which was elicited by the prosecutor in a series of questions. "In a case such as this where the victim's character and personal characteristics are not relevant to any material issue, . . . the prosecutor is under an obligation to refrain from so emphasizing those characteristics that he risks undermining the rationality and thus the integrity of the jury's verdict." *Commonwealth* v. *Santiago*, 425 Mass. 491, 495 (1997), *S.C.*, 427 Mass. 298 and 428 Mass. 39, cert. denied,

---

[5]The Commonwealth sought the court's permission to have the sister, a nonpercipient witness, remain in the court room at all times, not subject to sequestration. The objection to the testimony arose in this context, and was ruled on at that time.

525 U.S. 1003 (1998). Anne's general character (e.g., "a heart of gold") was not relevant to any theory of the prosecution or the defense. Contrast *Commonwealth* v. *Bonds*, 445 Mass. 821, 829-833 (2006) (evidence of rape victim's mental limitations relevant to explain her gullibility and presence with defendant). The testimony in the present case was not properly admitted, but the Commonwealth did not refer to it in its opening or closing, or otherwise emphasize the victim's character at trial. Under these circumstances, "the conviction is sure that the error did not influence the jury, or had but very slight effect." *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994) (quotations omitted).[6]

*Instruction on deadly force.* Santiago testified that when he woke to see the defendant on top of Anne, he struck the defendant with a tire iron. According to Santiago, the defendant then took the tire iron from him and beat him on the head and face. The defendant told the arson detective that after Santiago struck him, he struck Santiago back with his fists, wrestled the tire iron away from Santiago, and left. The defendant's theory, as explained to the jury by trial counsel in his opening and closing remarks, was consistent with the defendant's statement to police. That is, defense counsel adamantly denied that the defendant had hit Santiago with the tire iron, although counsel did state that if the defendant had done so, it would have been reasonable under the circumstances. Counsel further argued that Santiago told several conflicting stories, and that the real culprits were two men whom Santiago had previously described to the police. The medical personnel who provided treatment to Santiago testified that he was covered with blood and suffered from

---

[6]We have reviewed the record as a whole. Clearly, the prosecutor attempted to portray Anne's death in a graphic manner, and to place blame on the defendant. At trial, the Commonwealth suggested that the defendant was responsible for the fire, and offered testimony from medical experts that Anne's remains were so charred that physical evidence of rape and cause of death were not recoverable. Santiago gave several conflicting accounts to the police, including one in which two men were present at the time of the assault. The defendant sought to place blame on others, arguing to the jury that the two males were responsible for both the assault on Anne and the fire. No claim was made below or on appeal that the fact of the fire and Anne's death in it should not have been before the jury, or that the theory of the prosecution harmed the defendant. Accordingly, we do not consider these factors in assessing prejudice. *Commonwealth* v. *Merola*, 405 Mass. at 539.

soft tissue head wounds that were consistent with blunt force trauma from a tire iron, not a fist. The judge instructed the jury on the defendant's right to use nondeadly force in self-defense.

On appeal, the defendant argues that the judge should have instructed the jury on the defendant's right to use deadly force. Because the instruction was not requested, we review for a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Zimmerman*, 441 Mass. 146, 150 (2004). A deadly force instruction would have been inconsistent with the stated theory of the defense, that is, that only nondeadly force was used. The judge was not obligated to instruct on a theory that was at odds with, and would potentially undermine, the defense presented. See *Commonwealth* v. *Norris*, 462 Mass. at 143-144. Moreover, even if the defendant had requested a deadly force instruction in the alternative, a defendant is entitled to a self-defense with deadly force instruction only if any view of the evidence supports a reasonable doubt as to whether the defendant, among other things, reasonably and actually believed he was in imminent danger of death or serious bodily harm, and availed himself of all reasonable means of retreat. *Commonwealth* v. *Pike*, 428 Mass. 393, 395-399 (1998). Viewing the evidence in the light most favorable to the defendant, once he took the tire iron from Santiago, "any right to use self-defense terminated." *Commonwealth* v. *Nunes*, 430 Mass. 1, 5 (1999). Moreover, there was no testimony suggesting that retreat was not feasible. The defendant therefore was not entitled to an instruction on the use of deadly force in self-defense. *Commonwealth* v. *Pike*, *supra* at 399.

*Defective indictment.* The assault with intent to maim indictment alleged only that the defendant "did assault, with the malicious intent to maim or disfigure, the person of Raul Santiago, in violation of G. L. c. 265, § 15." The assault with intent provision of § 15 cross-references the mayhem statute, G. L. c. 265, § 14, which prohibits two forms of actual maiming. The first provision of § 14 specifies destruction or mutilation of an eye, ear, nose, lip, tongue, limb, or member in particular ways described with specificity in the statute.[7] The second

---

[7]The first branch of G. L. c. 265, § 14, provides:

"Whoever, with malicious intent to maim or disfigure, cuts out or

provision of § 14, as relevant here, contemplates an assault with a dangerous weapon with the intent to maim or disfigure, with the result that the assault disfigures, cripples, or inflicts serious or permanent physical injury.[8]

The indictment did not specify whether the defendant was charged with assault with intent to maim under the first branch of § 14, the second branch of § 14, or both. See *Commonwealth* v. *Hogan*, 7 Mass. App. Ct. 236, 246 & n.11, *S.C.*, 379 Mass. 190 (1979) (the two branches of the mayhem statute are separate and distinct bases of liability). On appeal, the defendant argues for the first time that the indictment was defective because it failed to state which type of mayhem he was alleged to have intended. "A challenge to the sufficiency of an indictment must be raised by a motion to dismiss prior to trial or it will be deemed waived, unless the defendant raises a claim that the court lacks jurisdiction or the indictment fails to charge an offense." *Commonwealth* v. *Senior*, 454 Mass. 12, 14 (2009). See G. L. c. 277, § 47A; Mass.R.Crim.P. 13(c)(2), as appearing in 442 Mass. 1516 (2004). Clearly, the indictment charged an offense. See *Commonwealth* v. *Sullivan*, 82 Mass. App. Ct. 293, 296 (2012), quoting from *Commonwealth* v. *Green*, 399 Mass. 565, 566 (1987) (an indictment is sufficient to state a crime if it contains " 'an appropriate legal term descriptive' of the criminal act"). Although the indictment was not specific, "[a]n indictment shall not be dismissed or be considered defective or insufficient . . . for lack of any description or information which might be obtained by requiring a bill of particulars." *Commonwealth* v. *Buckley*, 76 Mass. App. Ct. 123, 129 (2010), quoting from *Commonwealth* v. *Gonzalez*, 22 Mass. App. Ct.

---

maims the tongue, puts out or destroys an eye, cuts or tears off an ear, cuts, slits or mutilates the nose or lip, or cuts off or disables a limb or member, of another person . . . shall be punished by imprisonment . . . or by a fine . . . ."

[8]The second branch of G. L. c. 265, § 14, provides:

"[W]hoever, with intent to maim or disfigure, assaults another person with a dangerous weapon, substance or chemical, and by such assault disfigures, cripples or inflicts serious or permanent physical injury upon such person . . . shall be punished by imprisonment . . . or by a fine . . . ."

274, 284 (1986). G. L. c. 277, § 34. Here, no bill of particulars was requested, the issue was waived, and relief will not be granted on appeal.

*Duplicative convictions.* Pointing to evidence at trial showing that he hit the area near Santiago's eye using a dangerous weapon, the defendant further argues that his conviction of assault and battery by means of a dangerous weapon should be vacated because the jury clearly found that he had engaged in a battery, and the crime for which he was convicted is a lesser included offense of assault with intent to maim.

In determining whether one crime is a lesser included offense of another we look not to conduct, as the defendant urges us to do, but to the elements of the offense. *Commonwealth* v. *Vick*, 454 Mass. 418, 431-432 (2009). "A crime is a lesser-included offense of another crime if each of its elements is also an element of the other crime." *Commonwealth* v. *Perry*, 391 Mass. 808, 813 (1984). With respect to the crime of actual mayhem under § 14, assault and battery by means of a dangerous weapon is a lesser included offense of mayhem (second theory); mayhem (second theory) has been construed to require both the use of a dangerous weapon and an actual battery. See *Commonwealth* v. *Martin*, 425 Mass. 718, 722 & n.4 (1997); *Commonwealth* v. *Ogden O.*, 448 Mass. 798, 808 (2007).[9] "Mayhem (second theory) is essentially an assault and battery by means of a dangerous weapon, with the additional aggravating factors of a specific intent to maim or disfigure, and certain forms of resultant physical injury. Therefore, the latter is a lesser included offense of the former." *Commonwealth* v. *Martin, supra* at 722.

However, the defendant was not charged with actually maiming Santiago under § 14 but, rather, with an assault with intent to do so pursuant to § 15. The elements of the offenses of assault with intent to commit mayhem (second theory) and assault

---

[9]Assault and battery by means of a dangerous weapon is not a lesser included offense of actual mayhem (first theory) under § 14. Unlike assault and battery by means of a dangerous weapon, mayhem (first theory) does not require proof that a dangerous weapon was employed, but does require proof the defendant possessed malicious intent to maim or disfigure, and (under § 14) caused a specific form of injury. Thus, each crime includes an element the other does not. *Commonwealth* v. *Hogan*, 7 Mass. App. Ct. at 247-248.

and battery by means of a dangerous weapon are different.[10] The elements of assault with intent to commit mayhem (second theory) include an assault using a dangerous weapon, and with the intent to maim or disfigure, cripple, or inflict serious or permanent physical injury. Actual battery is not an element of the offense of assault with intent to maim under § 15. A conviction of assault and battery by means of a dangerous weapon requires the Commonwealth to prove that an actual battery occurred, but does not require proof of an intent to cause the particular forms of resultant physical injuries specified in § 14.[11] See *Commonwealth* v. *Porro*, 458 Mass. 526, 529-531 (2010). Accordingly, each offense includes proof of a fact which the other does not. See generally *Commonwealth* v. *Hogan*, 7 Mass. App. Ct. at 247-248. Assault and battery by means of a dangerous weapon is not a lesser included offense of assault with intent to maim, and the convictions are not duplicative.[12]

*Ineffective assistance of counsel.* The defendant maintains that his counsel was ineffective for failing to address the various unpreserved trial errors now argued on appeal. In view of our disposition of these arguments, there is no showing of inef-

---

[10]For the same reasons that assault and battery by means of a dangerous weapon is not a lesser included of mayhem (first theory), assault and battery by means of a dangerous weapon is not a lesser included offense of assault with intent to commit mayhem (first theory). The elements of assault with intent to commit mayhem (first theory) include an assault with intent to commit one of the specific forms of battery enumerated in § 14, with the intent to maim or disfigure. The crime of assault with intent to commit mayhem (first theory) does not require proof of the use of a dangerous weapon. Assault and battery by means of a dangerous weapon does require proof of use of a dangerous weapon, but does not require proof of intent to maim or disfigure. The crimes are distinct. See *Commonwealth* v. *Hogan*, 7 Mass. App. Ct. at 247-248.

[11]We note in passing that in the case of a reckless assault and battery, there must be some form of physical injury, see *Commonwealth* v. *Eberhart*, 461 Mass. 809, 818 (2012); *Commonwealth* v. *Welch*, 16 Mass. App. Ct. 271, 274, 276 (1983), but the injury need not be of the type set forth in § 14.

[12]The fact that the defendant was sentenced to consecutive terms on the two offenses is of no significance after *Vick.* "Where the elements differ, even if the two offenses arise from the same conduct, the defendant may be convicted of and sentenced on both offenses, and the sentence on one offense may begin on and after the completion of the sentence on the other offense." *Commonwealth* v. *Porro*, 458 Mass. at 532, citing *Commonwealth* v. *Vick*, 454 Mass. at 431, 436.

fective assistance. See *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). The failure to pursue futile or improbable arguments at trial cannot constitute ineffective assistance. See *Commonwealth* v. *Conceicao*, 388 Mass. 255, 264 (1983); *Commonwealth* v. *Delong*, 72 Mass. App. Ct. 42, 51 (2008).

*Judgments affirmed.*