SANTIAGO, COMMONWEALTH vs., 100 Mass. App. Ct. 700

 
 COMMONWEALTH vs. JOSE SANTIAGO.

100 Mass. App. Ct. 700
 October 20, 2021 - February 11, 2022

Court Below: Superior Court, Hampden County
Present: Milkey, Henry, & Walsh, JJ.

 

Armed Assault with Intent to Murder. Assault and Battery by Means of a Dangerous Weapon. Firearms. Constitutional Law, Identification. Due Process of Law, Identification. Evidence, Identification. Identification. Practice, Criminal, Motion to suppress, New trial, Identification of defendant in courtroom, Assistance of counsel.

A Superior Court judge did not err in denying a criminal defendant's pretrial motion to suppress a witness's out-of-court identification of the defendant based on two different photographic arrays, where the first array, in which the defendant was the only individual pictured not wearing a shirt, was not unnecessarily suggestive, in that the witness did not make an identification while examining the first array, suggesting that the defendant's lack of clothing did not impermissibly draw the witness's attention, and in that the defendant's bare chest was not relevant to his appearance at the time of the shooting [704-705]; and where the second array, which depicted the defendant wearing a shirt, also was not unnecessarily suggestive, in that it was shown to the witness after she failed to make an identification while examining the first array and independently initiated a second attempt to identify the defendant [705-706].

A Superior Court judge did not abuse his discretion in denying a criminal defendant's motion for a new trial claiming ineffective assistance of counsel based on counsel's failure to object to out-of-court identifications by two witnesses based on common-law fairness principles, where there were no highly suggestive circumstances at play warranting the application of common-law fairness principles [706-709]; further, the judge did not abuse his discretion in denying the defendant's motion for a new trial claiming that counsel provided ineffective assistance in failing to seek exclusion of in-court identifications of the defendant by two witnesses based on common-law fairness principles in light of the witnesses' initial expression of some uncertainty in making out-of-court identifications, before testifying at trial that they in fact had been certain all along and had expressed equivocation only because they were afraid, where the judge did not err in determining that the witnesses' identifications were unequivocal [709-711].

INDICTMENTS found and returned in the Superior Court Department on May 29, 2014.

 Page 701 

 A pretrial motion to suppress evidence was heard by Tina S. Page, J.; the cases were tried before John S. Ferrara, J.; and a motion for a new trial was considered by him.

 Michael J. Fellows for the defendant.

 Lee Baker, Assistant District Attorney, for the Commonwealth.

 WALSH, J. A Superior Court jury convicted the defendant of armed assault with intent to murder, assault and battery by means of a dangerous weapon, and illegal possession of a firearm. [Note 1] The defendant appeals from the judgments, claiming error in the denial of his motion to suppress two out-of-court identifications. He also appeals from the denial of his motion for a new trial based on a claim of ineffective assistance of counsel. For the reasons that follow, we affirm.

 Background. We summarize the relevant trial evidence as follows. On the evening of April 9, 2014, the victim and the defendant's son, D.G., met in Holyoke to fight. The victim's cousin, Rosa Colon, encouraged the brawl because she felt "disrespected" by D.G. [Note 2]

 As the victim prepared to fight, a crowd of twenty to thirty onlookers formed, including Colon and Ana Lucerna, who is an aunt of both Colon and the victim. At some point, the defendant stepped forward out of the crowd and approached the victim, seeking to discourage the fight as D.G. was a minor. The two men began to argue, and the defendant threatened to shoot the victim, yelling, "[Y]ou're a grown-ass man. You deserve to get shot." The defendant pulled a silver handgun from his waistband and fired three rounds. The victim sustained a gunshot wound to the buttocks while attempting to flee to safety.

 Holyoke police investigated the shooting and spoke to witnesses, including Colon. She identified the father of D.G. as the shooter, who police later learned was the defendant, Jose Santiago. Police also collected evidence, including text messages, photographs from the social media platform Facebook, and video footage (video). [Note 3]

 Two days after the shooting, Detective John Sevigne visited the victim at his home. He brought a photographic array (array) of

 Page 702 

 eight potential suspects, including the defendant. Sevigne compiled the array from booking photographs in the Holyoke Police Department database by matching basic characteristics including age, race, and weight. Of all the individuals pictured, the defendant was the only person not wearing a shirt.

 Prior to showing the victim the stack of eight color photographs, Sevigne read out loud the written instructions from the Holyoke Police Department "Photo Array Checklist" for identifications (checklist). The victim, after acknowledging he understood the instructions, was unable to make an identification. Lucerna was also present in the home when Sevigne visited. She asked to see the photographs, too. Sevigne read the instructions to Lucerna, who paused when she saw the defendant's photograph, but did she not identify anyone from the array.

 Later that same day, Colon visited the police station to provide a statement. Sevigne showed her a second array, created using photographs that Sevigne had selected from the registry of motor vehicles database. The defendant was wearing a shirt in this photograph. Sevigne created the second array because he was aware that the three potential witnesses all lived together and he had not informed them that they should not talk to one another about the case or the identification procedure. In order to reduce the chance that the witnesses had in fact talked to one another about the photographic identification, inadvertently causing them to be influenced by one another, he created the new array. [Note 4]

 Colon looked through all eight photographs, choosing three out of the array but stopping short of making a full identification. On one photograph, she wrote "[forty] percent shooter," on another "[fifty] percent," and on a third -- the photograph of the defendant -- she wrote "[sixty] percent shooter." Sevigne proceeded to take Colon's statement. When they finished the interview, Colon looked at the photographs once more, selecting the photograph of the defendant and writing "[one hundred] percent" on it. Below the defendant's photograph she wrote the following: "If he shot in front of a bunch of kids in front of my house, what makes you think he won't come after me and my family?" She testified at trial that she initially had recognized the photograph of the defendant as the shooter but hesitated to tell police because she 

 Page 703 

was scared that the defendant would retaliate.

 The next day, April 12, Lucerna visited the police station to give a statement and, of her own volition, asked to look at the photographs again. Sevigne had another officer, Lieutenant James Albert, show the second array to Lucerna to "err on the side of caution" because Sevigne had already shown Lucerna the first array (from booking photographs) at her home.

 Albert followed the written instructions from the checklist and showed Lucerna the second array, and she identified the defendant. On his photograph, she wrote: "This is the person th[e] shooter." She testified that she made this identification with one hundred percent certainty. She also testified that she failed to make a positive identification while looking at the first array because she was afraid that the defendant would harm her.

 Prior to trial, the defendant moved to suppress the identifications made by both women, arguing that the procedures employed by police were impermissibly suggestive. An evidentiary hearing was held before a judge in the Superior Court (motion judge) in September of 2016, and the motion was denied soon thereafter. At trial before a different judge (trial judge), Lucerna and Colon testified to their out-of-court identifications. Both women also identified the defendant as the shooter in court.

 The defendant timely appealed from the three judgments against him. He then filed a motion for a new trial. In that motion, he argued that his trial counsel was ineffective for (1) failing to seek exclusion of the out-of-court identifications under common-law fairness principles, and (2) failing to seek exclusion of the in-court identifications under Commonwealth v. Collins, 470 Mass. 255, 266-267 (2014). The trial judge denied the defendant's motion for a new trial without holding an evidentiary hearing. [Note 5] The defendant's appeal from the order denying the motion for a new trial was consolidated with his direct appeal.

 Page 704 

 Discussion. 1. Motion to suppress. In reviewing a motion to suppress, we accord deference to the motion judge's findings of fact, only disturbing them for clear error, but conduct an independent review of the "application of constitutional principles to the facts as found." Commonwealth v. Watson, 455 Mass. 246, 250 (2009).

 Under art. 12 of the Massachusetts Declaration of Rights, a witness's out-of-court identification is inadmissible if the defendant proves, by a preponderance of evidence and given the totality of the circumstances, that "the identification is so unnecessarily suggestive and conducive to irreparable misidentification that its admission would deprive the defendant of his right to due process." [Note 6] Commonwealth v. Crayton, 470 Mass. 228, 234 (2014), quoting Commonwealth v. Walker, 460 Mass. 590, 599 (2011). See Mass. G. Evid. § 1112(a)(1) (2021).

 The defendant claims that the motion judge erred by failing to find the initial array shown to Lucerna unnecessarily suggestive on the ground that the defendant was the only individual pictured not wearing a shirt. He avers that this improperly "dr[ew] the viewer's attention to [him]." We disagree.

 Our courts "disapprove of an array of photographs which distinguishes one suspect from all the others on the basis of some physical characteristic." Commonwealth v. Silva-Santiago, 453 Mass. 782, 795 (2009), quoting Commonwealth v. Melvin, 399 Mass. 201, 207 n.10 (1987). Nevertheless, we have permitted such identifications where the witness did not choose the defendant's photograph based on that characteristic. See Commonwealth v. Arzola, 470 Mass. 809, 813-814 (2015), cert. denied, 577 U.S. 1061 (2016). We likewise have permitted such identifications where the distinctive feature complained of did not relate to the defendant's appearance at the time of the crime. See, e.g., Commonwealth v. Marrero, 484 Mass. 341, 349 (2020) ("suggestibility" 

 Page 705 

created by fact that defendant was only person pictured in red shirt "minimal" as alleged perpetrator was not described as wearing red at time of shooting).

 The motion judge did not err in declining to suppress Lucerna's identification of the defendant based on the two arrays. As noted in the testimony at the suppression hearing, Lucerna did not make an identification while examining the first array (where the defendant was shirtless), suggesting that the defendant's lack of clothing did not impermissibly draw her attention. Moreover, the first array was like others that the Supreme Judicial Court has upheld, where the witness did not identify the defendant based on their defining characteristic. See Arzola, 470 Mass. at 813-814; Commonwealth v. Melvin, 399 Mass. 201, 206-207 (1987); Commonwealth v. Mobley, 369 Mass. 892, 896 (1976). Nor was the defendant's bare chest relevant to his appearance at the time of the shooting. See Marrero, 484 Mass. at 349. See also Arzola, supra at 813 (fact that defendant was only person in array wearing gray shirt was not unnecessarily suggestive because "focal point" of photograph was defendant's face and gray shirt was not "distinctive").

 The defendant also challenges Lucerna's being shown the second array after she failed to make an identification examining photographs from the first array. [Note 7] While the second array depicted the defendant in a shirt, he claims it was unnecessarily suggestive as a repeated array. We "discourage the use of repeated arrays containing a suspect's photograph." Commonwealth v. Carter, 475 Mass. 512, 518 (2016). But "[d]uplication of a defendant's photograph in one or more arrays [is] not . . . sufficient by itself to compel the suppression of a resulting identification." Commonwealth v. Wallace, 417 Mass. 126, 129 (1994), quoting Commonwealth v. Paszko, 391 Mass. 164, 169 (1984). Indeed, we have "declined to adopt 'a per se exclusionary rule condemning as constitutionally infirm all subsequent identifications of a defendant by any witness who had previously failed to select the defendant.'" Commonwealth v. Galipeau, 93 Mass. App. Ct. 225, 228 (2018), quoting Paszko, supra at 171.

 Page 706 

 Consistent with existing case law, the fact that Lucerna viewed the defendant's photographs twice is not sufficient by itself to warrant suppression. [Note 8] See Wallace, 417 Mass. at 129-130; Paszko, 391 Mass. at 169; Commonwealth v. LaPierre, 10 Mass. App. Ct. 641, 643-644 (1980). We do not require police to use the same array throughout the course of an investigation. Here, the police were permitted to refine the array in light of developments in the case, and the testimony shows that police used the second array to reduce any suggestiveness. See, e.g., Commonwealth v. Scott, 408 Mass. 811, 825-826 (1990) (fact that police created new array with "better" photograph of defendant was not unnecessarily suggestive); Paszko, supra at 171 (no unnecessary suggestiveness where witness was able to make positive identification looking at more recent picture). Moreover, the police did not refine the array with the intention of showing it to Lucerna a second time -- it was Lucerna who independently initiated a second attempt to identify the defendant from an array. "There was no passing or near passing of the constitutional boundary into fatal suggestiveness." Paszko, supra, quoting Commonwealth v. Cincotta, 379 Mass. 391, 397 (1979).

 2. Motion for new trial. A judge should grant a motion for a new trial only "if it appears that justice may not have been done." Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001). See Commonwealth v. Wheeler, 52 Mass. App. Ct. 631, 635 (2001). We review a decision on a motion for a new trial for a significant error of law or abuse of discretion. See Commonwealth v. Kolenovic, 471 Mass. 664, 672 (2015), S.C., 478 Mass. 189 (2017). "Under the abuse of discretion standard, the issue is whether the judge's decision resulted from a clear error of judgment in weighing the factors relevant to the decision . . . such that the decision falls outside the range of reasonable alternatives" (quotation and citation omitted). Id. Where, like here, the judge hearing the motion for a new trial also served as the trial judge, we give "special deference" to his ultimate decision as well as his factual findings. Commonwealth v. Lane, 462 Mass. 591, 597 (2012).

 The defendant bears the burden of proof when claiming entitlement to a new trial based on ineffective assistance of counsel.

 Page 707 

 See Kolenovic, 471 Mass. at 673. First, the defendant must demonstrate that "there has been serious incompetency, inefficiency, or inattention of counsel -- behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer." Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). Second, the defendant must show that because of counsel's errors, he was "likely deprived . . . of an otherwise available, substantial ground of defence." Id.

 a. Common-law fairness principles. The defendant challenges the trial judge's determination that counsel was not ineffective for failing to object to the out-of-court identifications based on common-law fairness principles. Common-law fairness principles apply where an identification of the defendant is made under "highly or especially suggestive circumstances" through "no fault of the police." Commonwealth v. Johnson, 473 Mass. 594, 598 (2016). See Mass. G. Evid. § 1112(a)(2). Judges may decline to admit such identifications where their "probative value is substantially outweighed by the danger of unfair prejudice." Id. at 599-600, quoting Crayton, 470 Mass. at 249 n.27. The probative value of the identification will "depend[] on the strength of its source independent of the suggestive circumstances of the identification." [Note 9] Johnson, supra at 601. We review applications of common-law fairness principles for an abuse of discretion. Id. at 602.

 The defendant claims, without any supporting evidence, that the close relationship between the victim, Lucerna, and Colon created a serious risk that they influenced one another in making their identifications. [Note 10] At trial, the victim testified that he, Lucerna,

 Page 708 

 and Colon watched a Facebook video of the shooting before viewing the arrays but testified that they did not converse about the contents of the video. [Note 11] Despite the victim's testimony, the defendant now argues a "reasonable inference" can be drawn that the witnesses communicated while watching the video and tainted the identification process.

 The trial judge disagreed, finding no evidence of highly suggestive circumstances warranting application of common-law fairness principles. The trial judge focused on the lack of evidence suggesting communication among the three witnesses, [Note 12] but he also considered the significant circumstantial evidence supporting the identifications such that their probative value outweighed any speculative prejudice.

 The trial judge specifically found that the victim received the video via social media after Colon and Lucerna had made their identifications. The defendant argues that this finding was clearly erroneous, and that this error in turn tainted the trial judge's analysis of the common-law fairness principles. The defendant's factual premise has at least some force, because the victim's testimony suggests that he showed the video to Colon and Lucerna just prior to Detective Sevigne's visit where he presented the first array. However, for the reasons set forth below, it does not follow that the process was unduly suggestive.

 Even considering the correct timing of when the witnesses watched the video, we agree with the trial judge that there is "deficient" evidence of influence to support exclusion under Johnson, 473 Mass. at 598, and in turn, a claim of ineffective assistance. None of the witnesses testified to verbal communication about the defendant's identity prior to or during the identification process. We decline to draw the inference proposed by the defendant that the mere fact of watching a video together, 

 Page 709 

without speaking, could change their perception of the events. [Note 13] Because we conclude that there were no highly suggestive circumstances at play warranting the application of common-law fairness principles, we need not reach the defendant's other challenges to the trial judge's analysis under Johnson, supra.

 b. In-court identifications. The defendant lastly challenges the trial judge's determination that counsel was not ineffective for failing to seek exclusion of the in-court identifications under Collins. In Collins, the Supreme Judicial Court announced a new rule based on common-law fairness principles: where a witness makes a "less than . . . unequivocal positive identification of the defendant during a nonsuggestive identification procedure," the witness's in-court identification will only be admitted where there is "'good reason' for it." [Note 14] Collins, 470 Mass. at 265, quoting Crayton, 470 Mass. at 235. See Mass. G. Evid. § 1112(c). This rule was born from concerns of confirmation bias produced by the prosecution of a defendant after an equivocal identification and by the risk that a jury may accord undue weight to the in-court identification, ignoring the initial out-of-court equivocation. Collins, supra at 262-264. Under Collins, "[a] witness makes an 'unequivocal positive identification' where he or she successfully identifies the defendant as the perpetrator, such that the statement of identification is clear and free from doubt." Commonwealth v. Dew, 478 Mass. 304, 315 (2017), quoting Collins, supra at 262.

 The defendant's argument presents the novel question of whether the presumptive exclusion under Collins applies where, as here, the witnesses initially appeared to express some uncertainty in making their identifications, but later testified that they in fact had been certain all along and had expressed equivocation only because they were afraid. For the reasons that follow, we 

 Page 710 

think Collins does not require exclusion in this circumstance.

 First, in deciding the new trial motion, it was within the range of reasonable alternatives for the judge, who had the opportunity to observe the witnesses at trial, to credit the testimony of Colon and Lucerna avowing that fear, not uncertainty, was behind their initial failed identifications. [Note 15]

 Second, it was therefore also within the range of reasonable alternatives for the trial judge to focus on the later identifications and conclude that they were (1) clear, as Colon and Lucerna each ultimately identified the same single suspect and (2) free from doubt, as both women testified to their one hundred percent certainty of the defendant's identity. See Commonwealth v. Yang, 98 Mass. App. Ct. 446, 447-448 (2020) (identification not clear or free from doubt where witness was only eighty percent sure of identification); Commonwealth v. Collins, 92 Mass. App. Ct. 395, 397 (2017) ("What made the identification equivocal in Collins, [470 Mass. at 255,] however, was . . . [the witness's] inability to choose between 'one of two [photographs] that looked like' the perpetrator").

 Third, the concerns underpinning the Supreme Judicial Court's decision in Collins are not implicated here. Some degree of confirmation bias may be inevitable any time an in-court identification follows an out-of-court identification. But the fact that the witnesses testified to their certainty of the defendant's identity soon after the crime and explained that their initial reluctance to identify him was from fear of retaliation sufficiently mitigates the risk that their confidence was "artificially inflated" by the defendant's prosecution. Collins, 470 Mass. at 262-263. The risk of the jury according too much weight to the in-court identification while ignoring the previous out-of-court equivocation was likewise mitigated by the testimony of the witnesses, which the jury heard and apparently credited, negating any initial uncertainty. Finally, assuaging both concerns is the substantial weight of independently inculpatory evidence. The defendant admitted he was present at the scene, he was the father of the teenager the victim was to fight, and he was wearing a large gold medallion 

 Page 711 

but claimed that he did not shoot the victim. The victim, Lucerna, and Colon testified that the shooter was wearing a large gold medallion and was the father of the person the victim was to fight.

 Thus, because the trial judge did not err in determining that the witnesses' identifications were unequivocal, the failure of trial counsel to object to the in-court identifications was not ineffective assistance of counsel. See Commonwealth v. Shippee, 83 Mass. App. Ct. 659, 668 (failure to raise "futile" arguments does not constitute ineffective assistance).

Judgments affirmed.

Order denying motion for new trial affirmed.

FOOTNOTES
[Note 1] The jury also convicted the defendant of possession of a firearm during the commission of a felony, but the Commonwealth entered a nolle prosequi as to that charge. 

[Note 2] Colon testified that she felt disrespected after D.G. broke up a fight between Colon and another woman the day before. 

[Note 3] The victim provided police with video of the events sent to him through social media. 

[Note 4] The defendant challenges the finding of fact by the judge hearing the motion to suppress that Sevigne created the second array because he found a more recent photograph of the defendant. The defendant is correct that this finding has no basis in the existing record. 

[Note 5] The trial judge reasoned that 

"[c]ircumstantial evidence supports the identifications and reduces the risk of mistaken identification. Colon told police that the shooter was [the] father [of the person the victim was supposed to fight] prior to any effort at identification. The comments made by the shooter suggest[ed] that he had animus toward [the victim] because he was going to fight [the shooter's] son, and told [the victim] that he 'deserved to get shot.' Both [the victim] and Colon testified that after the man made those statements, he pulled a gun from his waistband and started shooting. . . . [B]oth testified that the man who confronted and then shot [the victim] was wearing a large gold chain and medallion, which was visible in the video of the altercation. The man wearing the chain and medallion was the defendant."

The defendant conceded that he was present at the scene and was the person in the video wearing the large gold medallion and chain.

[Note 6] Massachusetts employs a more rigorous standard than the United States Supreme Court, which under the Fourteenth Amendment to the United States Constitution admits unnecessarily suggestive out-of-court identifications adjudged reliable considering the totality of the circumstances. See Commonwealth v. Crayton, 470 Mass. 228, 234 (2014). 

[Note 7] The defendant makes several additional claims surrounding the failure to follow certain recommended procedures in the identification process. Because the "absence of the recommended procedures goes only to the weight of the identifications, not admissibility," these arguments do not warrant further discussion. Commonwealth v. Carter, 475 Mass. 512, 518 (2016). 

[Note 8] Contrary to the defendant's suggestion, our cases do not impose a good cause requirement for the use of arrays containing defining characteristics or for the use of repeated arrays. 

[Note 9] The following factors are relevant to the strength of an identification's independent source: 

"the quality of the witness's opportunity to observe the offender at the time of the crime, the amount of time between the crime and the identification, whether the witness's earlier description of the perpetrator matches the defendant, and whether the witness earlier identified another person as the perpetrator or failed to identify the defendant as the perpetrator." 

Johnson, 473 Mass. at 601. A final factor, less relevant here, is "the witness's prior familiarity with the person identified, where that person is a witness's family member, friend, or long-time acquaintance." Id. at 601-602.

[Note 10] The defendant also points to Lucerna's testimony in which she stated that she often spoke about the incident to Colon and the victim in its aftermath. However, her testimony did not elucidate the timing of these conversations or whether they concerned the identification of the defendant. 

[Note 11] Colon, however, testified that she was not present when the victim viewed the video for the first time, and Lucerna testified that she could not recall the circumstances around watching it. 

[Note 12] The trial judge also noted that had the witnesses communicated, the prejudicial impact would have been low: 

"Even if Lucer[]na had described the array, it could not have influenced Colon's identification of the defendant. The picture in the array Lucerna was first shown was different from the one shown to Colon the next day. In the first array shown to Lucerna, the witness was shirtless. He was not shirtless in the second array which was shown to Colon, and later to Lucerna."

[Note 13] The Commonwealth aptly comments that "[e]vidence that Lucerna and Colon both viewed the video of the incident prior to being shown the photographic array is not equivalent to evidence that they discussed the details of the photographic array or that the imagined discussion somehow tainted their identification" and that "the defendant fails to develop his claim that 'Colon, Lucerna and the victim likely influenced each other by watching the video together prior to Colon and Lucerna making their identifications' by explaining what form that influence would have taken or why it was impermissible." 

[Note 14] Ordinarily, the other "good reason" standard articulated by the Supreme Judicial Court in Collins will "require a showing that the in-court identification is more reliable than the witness's earlier failure to make a positive identification and that it poses little risk of misidentification despite its suggestiveness." Commonwealth v. Dew, 478 Mass. 304, 320 (2017) (Gants, C.J., concurring), quoting Collins, 470 Mass. at 265. 

[Note 15] Our cases also suggest that even had the witnesses admitted to some degree of initial uncertainty, the identification may still be deemed unequivocal. See Commonwealth v. Collins, 92 Mass. App. Ct. 395, 396 (2017) (identification unequivocal even though witness "initially believed that two of the photographs looked similar to his assailant"). We need not consider how much uncertainty is permissible before an identification becomes equivocal to decide this case. 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.