APPEALS COURT 
 
 COMMONWEALTH vs. DEJAN BELNAVIS

 
 Docket:
 23-P-807
 
 
 Dates:
 May 13, 2024 – October 10, 2024
 
 
 Present:
 Ditkoff, Englander, & Smyth, JJ.
 
 
 County:
 Worcester
 

 
 Keywords:
 Assault and Battery by Means of a Dangerous Weapon. Assault by Means of a Dangerous Weapon. Constitutional Law, Identification. Due Process of Law, Identification. Identification. Evidence, Identification, Videotape, Photograph. Witness, Police officer. Practice, Criminal, Motion in limine.
 
 

       Complaint received and sworn to in the
Worcester Division of the District Court Department on July 1, 2021.
      The case was tried before Andrew J.
Abdella, J.
      Mitchell Kosht for the defendant.
      Jesse-Paul J. Crane, Assistant District
Attorney, for the Commonwealth.
      DITKOFF, J.  The defendant, Dejan Belnavis, appeals from
his convictions, after a jury trial in the District Court, of assault and
battery by means of a dangerous weapon, G. L. c. 265,
§ 15A (b), and assault by means of a dangerous weapon, G. L.
c. 265, § 15B (b).  We
conclude that two nonpercipient police officers should not have been allowed to
identify the defendant in court from Walmart surveillance video recordings,
where one officer had encountered the defendant twice and the other four times,
over a four or five-year period, and where there was no evidence that the
encounters were prolonged or memorable. 
Further concluding that this evidence, which the prosecutor relied upon
in his closing argument to establish the defendant's identity, created a
substantial risk of a miscarriage of justice, we reverse.
      1. 
Background.  On June 21, 2021,
surveillance cameras at the Walmart store in Worcester recorded an altercation
between a man wearing a white T-shirt, black pants, a black bag, white
sneakers, and sunglasses (who the Commonwealth contends is the defendant) and a
man wearing a blue T-shirt (victim).[1] 
In the moments leading up to the altercation, the man in the white shirt
and another man walked down an aisle in the store.  The victim and two other men stood ahead of
them in the aisle.
      As the man in white approached, he pointed
at one of the men with the victim.  The
man with the victim walked into the right-hand side of the aisle, and the
victim came up next to him, blocking the aisle to the right of the boxes.  The man in white remained in front of the
boxes.  The victim advanced to within a
few feet of the man in white, who pointed at him.  The victim rapidly spread out his arms and
then clasped his hands together, and then the man in white advanced and shoved
him in the chest with a firearm.  The
victim backed up, and the man in white passed the victim on the left.  The victim and his two companions turned to
face the man in white and took several steps toward him.  The man in white turned and pointed his
firearm at them.  All five men came
together in a circle, and, after a brief interaction, the man in white lunged
at the victim.  The victim backed up,
then lunged at the man in white, who retreated down the aisle with his
companion.
      Another camera at one of the store exits
captured footage of a man with the same appearance and clothing as the man in
white leaving the store.  The next day, a
police officer working a detail at the store took stills from several of the
video recordings depicting the man in white.
      The defendant was subsequently identified
by police as the man in white and charged accordingly.  No one who was present at the altercation
testified at trial.  Instead, after the
Walmart video recording was admitted, two officers from the Worcester police
gang unit testified.
      Each officer started by describing the
duties of a gang unit officer.  The first
officer described his duties as to "respond to any calls that include
firearms and gunshots" and to "interact with the community,"
including with "programs to help reintegrate those who have been arrested
for firearms and things like that back into society."  The second officer described his duties as
"[t]o identify gang members, identify the active feuds within the city,
follow-up on gang violent incidents; things along those lines."  Once redirected by the prosecutor, he agreed
that he "interact[s] with citizens on the street often," including
"anybody who's just out and about in the city."
      Each officer testified concerning his
encounters with the defendant. 
Specifically, the first officer had encountered the defendant four times
over a five-year period and had viewed his identification at least once, and
the second officer had encountered the defendant two times over a four-year
period and had been present when someone else asked for his identification.  Both officers identified the defendant as the
man in white seen in the surveillance videos.
      During closing arguments, the Commonwealth
played a portion of the surveillance footage depicting the man in white and
argued that
"it's this
individual who [the first officer] and [the second officer] identified as Dejan
Belnavis, somebody that they're familiar with, somebody that they know,
somebody that even [the first officer] has had an opportunity to ask him for
his license or identification and has been able to positively identify him,
Dejan Belnavis, through identification as Dejan Belnavis."
The jury
convicted the defendant on both counts. 
This appeal followed.
      2. 
Standard of review.  The defendant
did not object to the police identification testimony at issue.  Nonetheless, the defendant urges that the
issue was preserved by the defendant's motion in limine.  There seems to be a common misconception that
the filing of a motion of limine in a criminal case will always be adequate by
itself to preserve review of an error. 
That is not the case.
      In Commonwealth v. Grady, 474 Mass. 715,
719 (2016), the Supreme Judicial Court held that a defendant need not
"object to the admission of evidence at trial where he or she has already
sought to preclude the very same evidence at the motion in limine stage, and
the motion was heard and denied." 
Furthermore, in addition to the motion in limine needing to
(1) involve the "very same evidence" and to be
(2) "heard and denied," id., (3) it must be on the same
ground as raised on appeal.  See
Commonwealth v. Santana, 477 Mass. 610, 620 n.7 (2017); Commonwealth v. Almele,
474 Mass. 1017, 1018 (2016).  Absent
satisfaction of those requirements, the filing of a motion in limine does not
preserve an issue for appeal.
      Here, the defendant's invocation of Grady
falters at the second requirement. 
Although the defendant moved to preclude the police officer
identification in a pretrial motion in limine, the trial judge did not deny the
motion.  Instead, the judge ruled that he
would "allow the Commonwealth to elicit testimony to see if they can
establish a foundation to meet the factors necessary."  The judge directed the defendant to object at
that time if unsatisfied.  Under that
circumstance, it was incumbent on the defendant to object to alert the judge
that he believed the foundation had not been established, and the issue is
accordingly unpreserved.  See
Commonwealth v. Smith, 92 Mass. App. Ct. 417, 419 n.5, 422 n.12 (2017).
      "Because the defendant did not object
at trial to the challenged testimony . . . , 'we review his
claims to determine whether there was error, and, if so, whether the errors
created a substantial risk of a miscarriage of justice."  Commonwealth v. Cintron, 103 Mass. App. Ct.
799, 804 (2024), quoting Commonwealth v. Diaz, 100 Mass. App. Ct. 588, 596
(2022).  "In reviewing for a
substantial risk of a miscarriage of justice, we determine 'if we have a
serious doubt whether the result . . . might have been different had
the error not been made.'" 
Commonwealth v. Barros, 494 Mass. 100, 113 (2024), quoting Commonwealth
v. Azar, 435 Mass. 675, 687 (2002), S.C., 444 Mass. 72 (2005).
      3. 
Lay identification testimony.  A
percipient witness, including a police officer, may generally identify a
defendant if the witness either made an unequivocal, out-of-court, positive
identification of the defendant or there is "good reason" for
foregoing that process.  Commonwealth v.
Santiago, 100 Mass. App. Ct. 700, 709 (2022), quoting Commonwealth v. Collins,
470 Mass. 255, 265 (2014).  See Commonwealth
v. Crayton, 470 Mass. 228, 234-235 (2014). 
Where there is no testifying percipient witness and the defendant is to
be identified from a video recording or photograph, that is usually a task for
the jury, which is qualified to compare the video recording or photograph to
the defendant sitting in court.  See,
e.g., Commonwealth v. Quinones, 95 Mass. App. Ct. 156, 157 (2019).
      Nonetheless, "[a] lay witness is
permitted to identify an individual depicted in a video recording or photograph
if that testimony would assist the jurors in making their own independent
identification."  Commonwealth v.
Pina, 481 Mass. 413, 429 (2019).  Accord
Mass. G. Evid. § 701(b) (2024). 
"[S]uch testimony is admissible . . . when the witness
possesses sufficient[ly] relevant familiarity with the defendant that the jury
cannot also possess."  Pina, supra
at 430, quoting Commonwealth v. Vacher, 469 Mass. 425, 441 (2014).  Accord Mass. G. Evid. § 701(b)
note.  "Relevant factors to consider
include whether '[the images] are neither so unmistakably clear or so
hopelessly obscure that the witness is no better-suited than the jury to make
the identification' and 'whether the defendant is disguised in the photograph
or has changed his appearance since the time of the crime.'"  Commonwealth v. Matos, 95 Mass. App. Ct. 343,
349 (2019), quoting Commonwealth v. Pleas, 49 Mass. App. Ct. 321, 325, 326
(2000).  "The level of familiarity
between a witness and the suspect is measured by factors such as the number of
times the witness viewed the suspect previously; the duration, nature, and
setting of those encounters; and the period of time over which the encounters
occurred."  Commonwealth v. Thomas,
476 Mass. 451, 460 (2017).  The
identification testimony of a police officer, which carries a "possibly
greater imprint of authority . . . is not permissible absent some
compelling reason that the police officer is in a better position than the jury
to identify the defendant."  Pina,
supra.
      Here, despite being alerted to the need to
do so, the Commonwealth failed to establish that the officers had
"sufficient relevant familiarity" with the defendant to admit their
lay identification testimony.  See Pina,
481 Mass. at 430.  The officers'
encounters were infrequent and sporadic. 
The first officer had encountered the defendant only four times over a
five-year period.  The second officer had
encountered the defendant only two times in the four years before the trial and
not in the previous two or three years.
      Of course, even infrequent or sporadic encounters
might be adequate if those encounters were particularly memorable.  No such evidence was presented here.  From the testimony of each officer, the jury
could have inferred that they knew the defendant only through policing; each
officer testified that he had never socialized with the defendant, had never
had dealings with him outside of work, and was unaware of his personal
life.  Nor is there anything in the
evidence to suggest that, when the officers did encounter the defendant, these
encounters were particularly prolonged or involved, such that these sporadic
contacts would have been enough to give the officers special familiarity with
the defendant.  To the contrary, the only
evidence of the extent of the encounters was the first officer's testimony
that, on one occasion, he viewed the defendant's identification, and the second
officer's testimony that he was present when "somebody on scene asked him
for an identification."  Contrast
United States v. Kornegay, 410 F.3d 89, 95 (1st Cir. 2005) (affirming
identification testimony of officer who met with defendant six times in one
summer for purpose of distinguishing him from his twin brother).
      This degree of familiarity was inadequate
to place the officers "in a better position than the jury to identify the
defendant."  Pina, 481 Mass. at
430.  See Commonwealth v. Fisher, 492
Mass. 823, 851 (2023) (inadequate familiarity where officer interacted with
defendant at drive-through and watched video recordings of defendant numerous
times).  Contrast Commonwealth v. Brum,
492 Mass. 581, 593 (2023) (witness who "knew the defendant since middle
school and . . . the defendant recently had been her boyfriend's
roommate"); Pleas, 49 Mass. App. Ct. at 328 (officer "had known the
defendant socially for nine to ten years, . . . had met the
defendant's mother and had been to a barbecue at his house"); United
States v. Beck, 393 F.3d 1088, 1091 (9th Cir.) (probation officer had met with
defendant four times over two months), vacated on other grounds, 544 U.S. 1016
(2005); United States v. Allen, 787 F.2d 933, 935 (4th Cir. 1986), vacated on
other grounds, 479 U.S. 1077 (1987) (parole officer had met with defendant
monthly for six or seven months leading up to robbery and creation of
surveillance photographs).
      Furthermore, beyond wearing a pair of
sunglasses, the man in the videos was not "disguised," and there is
no contention that he otherwise "changed his appearance" after the
incident, such that even the officers' scant familiarity might be superior to
the jurors'.  Matos, 95 Mass. App. Ct. at
349.  In light of the officers' slight
familiarity with the defendant and the clarity of the video recordings, the
officers' testimony provided nothing that the jury could not also acquire by
observing the defendant as he sat in the court room in front of them for two
days, much longer than either of the officers had viewed the defendant.
      In the circumstances of this case, the
officers' testimony created a substantial risk of a miscarriage of
justice.  See Barros, 494 Mass. at
113.  The defense argued, among other
things, that the defendant had been misidentified.  In closing argument, the prosecutor relied
primarily on the officers' identification testimony, asserting that the
defendant was "somebody that they're familiar with, somebody that they
know," and that one officer "has been able to positively identify
him."  Although the prosecutor
stated that the "video and photo evidence . . . speak for
themselves," the prosecutor did not suggest that the jurors identify the
defendant themselves or that any other evidence established the defendant's
identity.  Cf. Fisher, 492 Mass. at 856
(no prejudice where "the prosecutor never relied on [the officer's]
identification of the defendant" and "implored the jury to compare
the photographs in evidence of the defendant with the individual seen in the
video recordings to make their own identification"); Vacher, 469 Mass. at
442 (no prejudice where defendant admitted to being present).  Similarly, the jury instructions did not
require the jurors to determine for themselves whether the defendant was the
person in the video recordings and photographs. 
See Fisher, supra at 853-854 (no prejudice where judge twice instructed
jurors that they were "not bound to accept that [identification] testimony
and, indeed, . . . must make [their] own determinations as to what
[they] see in those security videos" [emphasis omitted]).
      The prejudice to the defendant was further
increased by the evidence that the officers were gang unit officers and had
encountered the defendant in that capacity. 
See Commonwealth v. Wardsworth, 482 Mass. 454, 476 (2019), quoting
Vacher, 469 Mass. at 442 ("We have recognized the 'increase[d] potential
for inappropriate prejudice to the defendant stemming from identification testimony
from a police officer who is so designated'"); Cintron, 103 Mass. App. Ct.
at 804, quoting Commonwealth v. Gonzalez, 47 Mass. App. Ct. 255, 259 (1999)
("Evidence that a police officer knew persons 'from "dealing with
them in the past"' is suspect, and should be avoided").[2]  In this regard, both officers testified that
they were assigned to the Worcester police gang unit, and the second officer
described their duties as being "[t]o identify gang members, identify the
active feuds in the city, follow-up on gang violent incidents; things along
those lines."  The identification
testimony, therefore, encouraged the jurors to defer to the officers'
inadmissible identifications and to think of the defendant as a violent gang
member.  We have a serious doubt whether
the verdict would have been different without this inadmissible testimony.  See Wardsworth, supra at 476-477.[3]
Judgments
reversed.
Verdicts set
aside.

footnotes

[1] A
"fisheye" camera mounted overhead recorded the entire altercation;
another nearby camera recorded only the initial confrontation.  The parties were provided the shorter video
recording during discovery and first became aware of the longer video recording
at trial.

[2] In light of
our disposition, we need not decide whether the testimony about the gang unit
assignments was independently error.  It
does not appear that the prosecutor intended to elicit the particular testimony
concerning the duties of the gang unit, and the evidence is likely to come in
very differently at any retrial.  See
Commonwealth v. Conkey, 443 Mass. 60, 74 (2004), S.C., 452 Mass. 1022 (2008).

[3] We need not
reach the defendant's arguments concerning the late disclosure of some of the
video recordings, as the defendant has now received all of the video recordings
well in advance of any possible retrial. 
See Commonwealth v. Harris, 101 Mass. App. Ct. 308, 325 (2022) (need not
address claims that do not "concern matters likely to arise at any
retrial").